Christopher LAUBACH, on behalf of
himself and all others similarly
situated, et al., Plaintiffs,

v.

ARROW SERVICE BUREAU, INC., La-
son Systems, Inc., Alan Slodki, Robert
Lavin and Norma Lavin, Defendants.

No. 97 C 26.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Beth Ilyse Solomon, Rick D. Young, Edelman & Combs, Chicago, IL, for plaintiffs.

John Michael Hynes, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Roger J. Guerin, Alan S. Madans, John G. Dalton, Rothschild, Barry & Myers, P.C., Chicago, IL, Laurence B. Deitch, Joel H. Serlin, Seyburn, Kahn, Ginn, Bess, Deitch and Serlin, Southfield, MI, Daniel Francis Konicek, Connelly and Schroeder, Geneva, IL, for defendants.

### *MEMORANDUM OPINION*

GRADY, District Judge.

Before the court is defendant Lason Services, Inc.'s motion for summary judgment. For the reasons stated in this opinion, the defendant's motion is granted.

### *BACKGROUND*

The plaintiffs are a group of debtors [1] who allege that the various defendants engaged in a "phony attorney letter scheme" and violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. 1692, et seq. The plaintiffs received a "Priority Gram" letter requesting partial payment to settle a debt owed to A.S.B. Living Well/Paramount Acceptance, a company that sells health club memberships.[2] The debt

---

1. Plaintiffs have made a motion for class certification. This court delayed reaching a decision on that motion until deciding Lason's motion for summary judgment.

2. The letter to plaintiff Christopher Laubach stated:
   THIS IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

   I HAVE BEEN AUTHORIZED BY A.S.B. LIVING WELL / PARAMOUNT ACCEPTANCE TO OFFER YOU AN OPPORTUNITY TO LIQUIDATE YOUR INDEBTEDNESS ON YOUR A.S.B. LIVING WELL / PARAMOUNT ACCEPTANCE ACCOUNT NUMBER NM052304.
   A 40% SETTLEMENT OF $206.82 PAID IN ONE PAYMENT WITHIN 30 DAYS FROM THE DATE OF THIS LETTER WILL BE ACCEPTED AS SETTLED IN FULL.

collection letter was ostensibly sent from defendant Alan Slodki, who is an attorney practicing in Illinois. Slodki's full name, the name of his law firm, his phone number, and his office address appeared on the letter; no other debt collector was mentioned. The letter bore no handwritten signature. Despite the appearance that Attorney Slodki was involved in collecting the debt, the plaintiffs assert that he did not review the debtors' files, advise the creditor how to proceed, or even mail out the letters bearing his name. Rather, his involvement was limited to one act: he authorized defendant Arrow Services Bureau, Inc. ("Arrow") to use his name in their debt collection efforts.

Arrow is a debt collection agency acting on behalf of A.S.B. Living Well. Arrow hired defendant Lason Services, Inc. ("Lason") to aid in the dissemination of letters to the debtors. Lason's activities included, among other things, storing Arrow's debt collection letters on computers, merging the letters with Arrow's mailing lists, printing the letters, and mailing them to the debtors. Plaintiffs allege that Lason further aided Arrow by writing and formatting the letter at issue. Lason denies this allegation.

The plaintiffs have asserted that Lason's activities constitute a violation of § 1692j of the FDCPA. In the alternative, they allege that Lason is a "debt collector" within the meaning of the FDCPA and is therefore liable under §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692(f). The plaintiffs also charge various state law violations. Lason has moved for summary judgment on all of these claims.[3]

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.1997). "A dispute over material facts is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Kennedy v. Children's Serv. Soc'y of Wis.*, 17 F.3d 980, 983 (7th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [plaintiff's] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir.1995).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other documentary evidence contradicting the assertion. *Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir.1995). If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

PLEASE BE ADVISED THAT AFTER THE 30 DAY PERIOD THIS OFFER WILL BE VOID AND THE FULL BALANCE WILL THEN BECOME DUE.
MAY I SUGGEST THAT YOU TAKE ADVANTAGE OF THIS MONEY SAVING OPPORTUNITY AND MAIL YOUR PAYMENT TO MY OFFICE TODAY.
UPON RECEIPT OF YOUR SETTLEMENT PAYMENT WE WILL FORWARD TO YOU A LETTER FOR YOUR LOCAL CREDIT BUREAU INDICATING YOUR ACCOUNT IS SETTLED IN FULL.
VERY TRULY YOURS,
ALAN M. SLODKI & ASSOCIATES, LTD.

3. Initially, the plaintiffs only charged Lason with violations of FDCPA § 1692j and various state laws. After Lason filed its motion for summary judgment, the plaintiffs amended their complaint to allege that Lason is a "debt collector" and to add the charges under §§ 1692e and 1692f.

## A. The § 1692 Claim

The plaintiffs have asserted that Lason's activities in connection with the letters are sufficient to constitute a violation of § 1692j(a) of the FDCPA. The language of that section reads as follows:

It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C.A. § 1692j (a) (West, 1997).

Lason moves for summary judgment, asserting that its actions are insufficient to constitute "design[ing], compil[ing], and furnish[ing] a form" under § 1692j because it did not compose the letter at issue.[4] In response, the plaintiffs argue that Lason's business practice is to write the text of the letters it mails and that Lason did in fact write this particular letter. Additionally, the plaintiffs argue that even if Lason did not write the letter, its mass production and dissemination of the letter are sufficient to render it liable under the statute. We address each of these arguments in turn.

Lason has introduced two significant pieces of evidence that it did not write the phony attorney letter and that it acted solely as a printer. First, Lason has presented the deposition of Allen Nesbitt, a member of Lason's Board of Directors. Lason's Reply Memorandum in Support of Summary Judgment, Ex. 3 ("Nesbitt Deposition"). In that deposition, Nesbitt describes Lason as an outsourcing company that replaces their customers' printing and mailing operations. Nesbitt Deposition at 62. The customer mails or faxes to Lason the text it wants to disseminate. *Id.* at 34–35. Lason keys the text into its computer system, proofreads it,

and sends a copy back to the customer for verification. *Id.* Once it has been verified, Lason merges the text with the list of names and addresses the customer provides, it laser prints the letters, and folds and mails the finished product to the debtors. *Id.* Nesbitt avers that Lason does not write, edit, or approve the content of the letters it prints and mails out for its clients. Declaration of Allen J. Nesbitt, ¶ 11.

Lason has also presented the deposition of Brian Cutler, Arrow's Vice President of Operations.[5] Lason's Reply Memorandum in Support of Summary Judgment, Ex. 2 ("Cutler Deposition"). In that deposition, Cutler testified that the services Lason provided to Arrow were purely printing and mailing services. He further stated that Lason has never drafted any of Arrow's collection letters, nor has it ever given advice as to the content of Arrow's collection letters. Cutler Deposition at 42–44. Furthermore, Lason does not determine which of Arrow's forty letters stored in Lason's database to send to which of the debtors; Arrow controls the process.

Finally, Lason points out that the plaintiffs admitted the truth of the following statement:

As part of its business, Lason prints and mails letters for its clients. Lason is not the author or the originator of these letters. Lason is merely an outsource for high speed laser printing of its clients' letters using an advanced computer network.

Plaintiff's Responses to Lason's Material Facts ("Plaintiff's 12N Statement"), ¶ 14.

We find that Lason has supported its contention with sufficient evidence, so the burden shifts to the plaintiffs to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e). The plaintiffs offer two pieces of evidence that

---

**4.** Lason asserts other defenses as well. First, it argues that the statute is designed to prohibit a particular practice known as "flat-rating" only, and Lason is not a "flat-rater." Second, it argues that the statute only prohibits a person from falsely implying that *it* is collecting a debt, and here Lason never implied that it was collecting a debt. Because Lason's first argument is disposi-

tive of the issue, we do not consider these other arguments.

**5.** The plaintiffs and Lason both refer to the deposition of Brian Cutler which was not taken in this case but in another case pending before Judge Castillo.

Lason did write the letter: (1) the prospectus of Lason's parent corporation, Lason, Inc., and (2) Lason's promotional brochures. In Lason, Inc.'s prospectus section detailing "Risk Factors," a statement on "Potential Liability for Violations of Regulations; Litigation" states, in relevant part:

> Certain of the Company's customers, and certain of the Company's services as used by those customers, such as collection letter processing, are subject to various consumer protection laws, including the Fair Debt Collection Practices Act. **The format and wording of many of the collection letters distributed by the Company, including its Priority Gram, are developed by the Company.** From time to time, certain of the Company's customers are subject to claims or are parties to litigation under such laws involving services supplied by the Company to such customers, such as collection letter processing.

Plaintiff's Response to Lason's Motion for Summary Judgment ("Plaintiff's Response"), App. C at 12 (emphasis added). Furthermore, the plaintiffs point to the promotional brochures that Lason uses to advertise its services, noting in particular that Lason promotes itself as a "strategic partner" that develops techniques to encourage debtors to open their mail. Plaintiff's Response, App. E, I. The plaintiffs suggest that this evidence shows that Lason's business goes beyond printing and mailing, and extends to advising their customers on the substantive content of their letters.

We find this evidence insufficient to rebut Lason's specific proof that it did not compose the letter at issue. While the disclosure of risk statement in the prospectus and, to a lesser extent, the advertising materials may be somewhat probative of Lason's general business practices, they are not reliable evidence of what Lason did with regard to this particular client and these particular letters. *See Dalton v. FMA Enterprises, Inc.*, 953 F.Supp. 1525, 1533 (M.D.Fla.1997), (refusing to grant summary judgment because neither party advanced any definitive proof of the defendant's specific involvement with the accounts at issue, but rather, only habit evidence was presented). In particular, we note

that the evidence shows that Lason's regular practice with Arrow was simply to print Arrow's text, and there is no evidence that Lason deviated from that practice on this occasion. Even if we construe the prospectus as habit evidence tending to show that Lason regularly wrote the text of the letters for other clients—a dubious construction with this paucity of evidence—that is not "specific" proof that Lason contributed to the substance of this letter, and so is insufficient evidence to create a genuine dispute of material fact. We find that there is no genuine factual issue as to whether Lason wrote or contributed to the text of the letter, or as to whether its activities went beyond printing and mailing.

■■■ The second issue is whether Lason's label merging, letter printing, and mass mailing services are sufficient, as a matter of law, to constitute "design[ing], compil[ing], and furnish[ing] any form" within the meaning of § 1692j. The statute itself does not define the phrase "design, compile, and furnish any form." A fundamental canon of statutory construction instructs that in the absence of statutory definition, the court will accord words and phrases their ordinary and natural meaning, and in so doing, the court will avoid rendering the statutory language meaningless, redundant, or superfluous. *In re Merchants Grain, Inc. By and Through Mahern*, 93 F.3d 1347, 1353–54 (7th Cir. 1996), *cert. denied, Mahern v. Adkins,* —— U.S. ——, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997) (using the Oxford English Dictionary to ascertain meaning) Statutory interpretation is a holistic endeavor that must account for a statute's full text, language, punctuation, structure, and subject matter. *Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund, et al., v. Leaseway Transp., Corp.*, 76 F.3d 824, 828 (7th Cir.1996). When interpreting a statute, "a court must not be guided by a single sentence or member of a sentence, but look to the provision of the whole law, and to its object and policy." *Grammatico v. United States,* 109 F.3d 1198, 1204 (7th Cir.1997).

■■■ Other tools of statutory construction also aid our understanding. Under the

canon of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific meaning. In addition, the maxim *noscitur a sociis,* that a word is known by the company it keeps, is often "wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Newsom v. Friedman,* 76 F.3d 813, 820 (7th Cir.1996) (internal quotation marks and citation omitted).

■■ The ordinary. and natural meaning of "design" is "to conceive and plan out in the mind"; "compile" means "to compose out of materials from other documents"; and "furnish" means "to provide with what is needed." Webster's Ninth New Collegiate Dictionary. The use of the conjunction "and" linking the words together signifies that all three are required as elements of the offense. *See Ortiz v. Secretary of Defense,* 41 F.3d 738, 742 (D.C.Cir.1994) (stating that use of the conjunction "and" means that *both* provisions of the regulation must be satisfied). Although each word has a separate and distinct meaning, under the canon of *ejusdem generis* the more general word "furnish" should be read in light of the specific meanings of the words "design" and "compile." That suggests that "furnish" means more than simple delivery or dissemination; rather, it means supplying what is needed from one's own work or resources.[6] In other words, the form must have been conceived, prepared, and issued by the defendant.

The few cases discussing violations of 1692j support this interpretation of the statute. Although no case defines "design, compile and furnish a form," defendants generally incur liability under § 1692j where they actually write or otherwise originate the form letter. *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir.1997) (refusing to grant summary judgment for defendants where the form letter at issue had originated with and was prepared by the defendants); *Littles v. Lieberman,* 90 B.R. 700 (E.D.Pa.1988) (finding that the defendant violated § 1692j because the form letter originated from him). ;*See also, Kohlenbrener v. Dickinson,* No. 94 C 4696, 1996 WL 137656 (N.D.Ill. March 25, 1996) (finding a genuine issue of material fact as to whether defendant, who wrote the form letter, actually participated in the debt collection so as not to render her liable under § 1692j). By contrast, at least one court has stated that printing or selling stationery without knowledge of its intended use is insufficient to impose liability under § 1692j. *In re Scrimpsher,* 17 B.R. 999, 1011 (Bankr.N.D.N.Y.1982)(citing legislative history).

■■ Applying the statute to this case, then, it is clear that Lason's label merging, letter printing, and mass mailing activities are not violations of § 1692j. There is no evidence that Lason contributed to the substance of the letters; there is no evidence that Lason conceived or suggested the strategy of mailing phony attorney letters; nor did Lason duplicate a comparable letter from its own files for Arrow's use. Rather, the only specific evidence on the question indicates that the letter originated exclusively from Arrow. It simply cannot be said that Lason "designed" the letter at issue. Similarly, it cannot be said that Lason "furnished" the letter, because merely printing and disseminating a text written by a customer is insufficient to come within the statute. *See Scrimpsher,* 17 B.R. 999, 1011.

---

**6.** The legislative history of the FDCPA also supports this reading. There is some evidence that Congress passed this particular provision in order to curb a practice known as "flat-rating," in which a "flat-rater" writes and disseminates, en masse, letters to debtors implying that the "flat-rater" is a collection agency. S.Rep. No. 95–382, at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. In fact, the "flat-rater" is not involved in collecting the debt; rather the "flat-rater" was hired by the creditor/debt-collector solely to compose and send "dunning letters" to intimidate debtors into paying the debt. *Id.*

The legislative history indicates that Congress distinguished this practice from a situation in which a printer or custom stationery seller prints or sells forms to creditors without knowledge of how they will be used. *Id.; see Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 227 (7th Cir.1997) (stating that courts may interpret a broadly worded statute by identifying the prototypical situation addressed by the statute and then determining how close the prototype is to the case at hand).

Although it might be argued that by merging the letter text with the names and addresses of the debtors Lason "compiled" the letters, that alone cannot impose liability on Lason. *See Ortiz,* 41 F.3d at 742.

The plaintiffs argue that Lason should be held liable because it knew or should have known that the letters were deceptive. They point out that the name of their client, Arrow, did not appear even once on the letter; rather, the letter was ostensibly sent by an attorney whom Lason did not know. Therefore, Lason was in a position to recognize the deceptive nature of the letter. We find that this claim lacks merit. Lason was hired to print whatever text its client requested, not to analyze the legality of its client's text. Lason was under no obligation to investigate the relationship between Arrow and Slodki—for all Lason knew, Slodki was participating in the debt collection by evaluating debtors' files and determining which debtors were to receive the attorney letters. More fundamentally, Lason did not violate the statute in any event because it did not "design" the letters.

We grant summary judgment in favor of the defendants on the § 1692j claim.

### B. *Other Violations of the FDCPA*

The plaintiffs assert the Lason is a "debt collector" within the meaning of the Act, and as such, Lason violated other sections of the FDCPA. *See* 15 U.S.C.A. §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692(f) (imposing liability solely on "debt collectors"). Lason argues that it is outside the statutory definition of "debt collector," and so is not liable under these provisions of the FDCPA. Therefore, Lason maintains, it is entitled to summary judgment on these other claims.

The FDCPA defines "debt collector" as any person (1) who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a(6). The Supreme Court recently cited Black's Law Dictionary for the definition that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceeding." *Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 1491, 131 L.Ed.2d 395 (1995) (stating that an attorney may be a "debt collector"). In addition to identifying the defendant's principal business purpose, when courts determine whether a defendant is a "debt collector" they inquire into whether the defendant directed the debtors to submit payment to itself or to the creditor, *Crossley v. Lieberman,* 868 F.2d 566, 570 (3rd Cir. 1989), and whether the defendant regularly collects debts owed to any entity other than itself, *Oldroyd v. Associates Consumer Discount Co.,* 863 F.Supp. 237, 242 (E.D.Pa. 1994).

Applying these criteria to the instant case, it is clear that Lason is not a "debt collector" within the meaning of the FDCPA. First, the plaintiffs admit that Lason does not collect money from debtors. Plaintiffs' 12N Statement, ¶ 24. Indeed, in the letters, debtors are never asked or instructed to contact Lason, and Lason does not include its return address or phone number in the collection letters it prints. *Id.* at ¶ 25. The plaintiffs also agree that Lason does not provide follow-up collection services, such as calling the debtors. *Id.* at ¶ 27. Lason's fees are not contingent upon the amount of money its clients actually collect; rather, Lason charges its clients on a per-copy basis. *Id.* at 29, 30. Very significantly, the plaintiffs admit that Lason has no relationship with the debtors' creditors. *Id.* at 28.

The plaintiffs attempt to defeat the necessary conclusion that Lason is not a "debt collector" by focusing on Lason's debt collector clients and the volume of letters Lason prints. They argue that Lason is a debt collector because a significant portion (about 30 percent) of its business is devoted to generating and mailing debt collection letters,[7] and that Lason promotes itself as a

---

7. Lason stated that in the last year, it mailed approximately 141 million letters for its clients. Approximately 41 million of these letters were

for its collection agency clients. Defendant Lason System, Inc.'s Rule 12M(3) Statement of Undisputed Facts in Support of its Motion for

"partner" with its clients, many of whom are debt collectors. In addition, Lason's brochures state that it has developed techniques specifically designed to entice debtors to open their letters, and it promises its debt collector clients that these techniques will help them collect more money. *See* Plaintiff's Response, Ex. E, I.

All of these assertions, though true, are not sufficient to make "debt collector" a legitimate characterization of the services Lason provides. The techniques Lason employs to encourage debt collection include: using eye-catching colors on its envelopes; mailing with first class postage; disseminating letters within 24 hours of receiving data from its clients; using the National Change of Address service to check debtors' addresses; and maximizing postal discounts that allow clients to send more letters. Plaintiff's Response, Ex. E, H, I. Lason is a printer and mailer. It prints and mails collection letters, bank statements, recall notices, and other business documents. Nesbitt Declaration, ¶ 22. Lason is no more a "debt collector" when it generates the collection letters than it is a bank when it generates bank statements. Lason's promotional brochures labeling itself as a "partner" with its clients are nothing more than advertisement techniques designed to solicit business. This is consistent with Nesbitt's explanation that this advertisement offered Lason's services as an outsourcer that aspires to replace its clients'

printing and mailing departments. Nesbitt Deposition at 61–62.

For these reasons, we find that there is no genuine factual issue as to whether Lason is a debt collector. Therefore, it cannot be held liable under FDCPA sections 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692(f). We grant summary judgment for the defendants as to these claims.

## C. *Pendent State Law Claims*

■ Finally, Lason asserts that this court should dismiss the pendent state law claims if all the federal law claims are dismissed. The general rule is that when all federal claims have been dismissed before trial, the pendent claims should be left to the state courts. *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1251–52 (7th Cir.1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). However, the parties have not addressed the question of whether we should exercise supplemental jurisdiction over the state law claims against Lason, inasmuch as those same claims are asserted against Arrow.[8] This is a subject we will address at the status conference indicated below.[9]

For the reasons stated above, we grant summary judgment for the defendant Lason Services, Inc. on all federal claims. We re-

Summary Judgment, ¶¶ 32–33. Of that number, 1.9 million were Priority–Grams. *Id.*

**8.** This court has discretion in determining whether to exercise supplemental jurisdiction over Lason. *See Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 345–46 (D.C.Cir.1997). The supplemental jurisdiction statute states:

> [I]n any action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related to claims* in the action within such original jurisdiction that they are part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. 1367(a)(emphasis added). *See Jones v. Village of Villa Park*, 784 F.Supp. 533 (N.D.Ill.1992) (retaining jurisdiction over the state law claims against one defendant after the federal claim against that defendant was dismissed). However, where the district court has dismissed all claims over which it has original

jurisdiction, "the district courts may decline to exercise supplemental jurisdiction" over the state law claims. *Id.* at 1367(c)(3).

**9.** We are inclined to think that the factual issues in the state law claims against Lason will revolve around whether it knew Slodki was not involved in the debt collection (if indeed he was not). This appears to be a very different factual issue than will be presented as to Arrow. It may be, therefore, that there would be no significant judicial economy in this court retaining supplemental jurisdiction over Lason. *See Wright*, 29 F.3d at 1250 (stating that the courts should consider judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state law claims); *Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1480 (E.D.Pa. 1994) (refusing to exercise supplemental jurisdiction over plaintiff's state law claims because they would involve presentation of facts at trial that are wholly separate from the federal claim the court retained).

serve ruling on whether we will retain jurisdiction over the state law claims.

The parties should appear on November 19, 1997, at 9:30 a.m. for a status hearing to discuss the question of supplemental jurisdiction and the appropriateness of class certification in light of these rulings.