Michael A. AUBERT, Plaintiff–Appellant,

v.

AMERICAN GENERAL FINANCE, INC., et al., Defendants–Appellees.

No. 97–2111.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1997.

Decided March 2, 1998.

Daniel R. Freund (argued), Eau Claire, WI, for Plaintiff–Appellant.

DeVonna Joy (argued), Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Defendants–Appellees.

Before COFFEY, FLAUM, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Michael Aubert obtained a "More Card" credit card from American General Financial Center ("AGFC"), a Utah depository institution. Aubert allowed his account to become delinquent; his December 1995 statement reflected a balance of $667.51 and indicated that his charging privileges had been terminated. Aubert's January statement informed him that: "Your account is rapidly approaching charge-off. The account will be referred to an attorney or a collection agency. Call 1–800–932–7357." The next communication that Aubert received was a letter from the "AGFC Collection Group" dated February 13, 1996. The letter, in part, told Aubert that:

> YOU HAVE DEFAULTED ON YOUR AGREEMENT!
>
> As a result your account has been referred to the AGFC Collection Group and the balance in full is due IMMEDIATELY!
>
> You must call us within 48 hours.... Failure to respond to this notice will force us to proceed with further collection activity.

Aubert believed that this letter was sent by a collection agency, and he filed suit in the district court asserting several violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692 to 1692o. The parties consented to a trial before a magistrate judge who, upon the defendants' motion, granted summary judgment against Aubert. We affirm.

We review a district court's decision to grant summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor. See, e.g., Bruner Corp. v. R.A. Bruner Co., 133 F.3d 491, 495 (7th Cir.1998). We will affirm a summary judgment if the evidentiary record indicates "that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The facts material to this case are not in dispute. AGFC Collection Group, the entity that sent the February 13th letter to Aubert, is an internal corporate division of Service Bureau of Indiana, Inc. ("SBI"), an Indiana corporation. SBI and AGFC, the company that issued Aubert's More Card, both are wholly owned subsidiaries of American General Finance, Inc. ("AGF"), which is also an Indiana corporation.

On appeal, Aubert does not dispute the district court's factual finding that "SBI's principal business is not the collection of debts." Along with providing collection services for AGFC credit card accounts, SBI provides a number of other services for AGFC accounts that are unrelated to debt collection. Among other things, SBI answers customer service telephone lines, provides services to cardholders whose cards are lost or stolen, and responds to questions from customers regarding monthly statements and billing disputes. In addition, SBI handles AGFC's marketing, manages its vendor and supplier mail solicitations, assures compliance with Mastercard and VISA rules, oversees the computerized credit card account system, provides security services, and investigates fraudulent activity. SBI also provides collection services for it and AGFC's corporate parent, AGF. SBI does not, however, provide collection services to any non-affiliated corporate entities.

Aubert argues that SBI's February 13th letter to him violated the FDCPA. He further argues that this alleged violation extends under a theory of corporate veil-piercing to both AGFC, which allegedly facilitated the violations as SBI's sister corporation, and AGF, the parent corporation. We turn first to SBI's liability.

SBI is not a "debt collector" as that term is defined by the FDCPA and therefore is not subject to the requirements and restrictions of the Act. Under the FDCPA:

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). Creditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the Act. This is consistent with the FDCPA's stated purpose of "eliminat[ing] abusive debt collection practices by debt collectors." Id. § 1692(e). Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own. See Harrison v. NBD Inc., 968 F.Supp. 837, 841 (E.D.N.Y.1997).

SBI was collecting a debt "owed or due or asserted to be owed or due another." Therefore, when read alone, § 1692a(6)'s definition of a "debt collector" indicates that SBI's collection activities on behalf of AGFC are covered by the Act. After defining "debt collector," however, the statute excludes from its definition

any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B). Thus, a corporate affiliate is excluded from the Act's coverage so long as it satisfies two conditions: (1) the affiliate collects debts only for entities with which it is affiliated or related; and (2) the principal business of the affiliate is not debt collection. See, e.g., Meads v. Citicorp Credit Servs., Inc., 686 F.Supp. 330, 334 (S.D.Ga. 1988); Phillips v. Periodical Publishers' Serv. Bureau, Inc., 300 S.C. 444, 388 S.E.2d 787, 788 (1989). As we indicated above, Aubert does not dispute that SBI, AGFC's cor-

porate affiliate, satisfies both of these conditions.

In support of his claim against SBI, Aubert does not argue that the language of § 1692a(6)(B) compels a contrary reading. Instead, he argues that a "plain meaning" interpretation of the affiliate exclusion would create a loophole that is inconsistent with the intent and purposes of the Act: While a creditor that collects its own debts under "any name other than [its] own" is considered a "debt collector" under § 1692a(6), our reading of § 1692a(6)(B) enables an affiliate of that creditor to collect debts under any name that it chooses, so long as the affiliate otherwise satisfies the conditions required for exclusion from the Act. Therefore, an affiliate could collect debts under an assumed name without regard for protecting corporate goodwill. Aubert argues that this loophole enables creditors, acting through their affiliates, to engage in the same abusive practices that Congress intended to eliminate by enacting the FDCPA. To avoid the loophole, Aubert asks us to read an additional condition into § 1692a(6)(B): that corporate affiliates must collect debts in the name of the creditor.

While Aubert raises a strong policy argument in support of his position, our role, when the language of a statute is plain, is to enforce that statute according to its terms. *See, e.g., Central States v. Bell Transit Co.*, 22 F.3d 706, 710 (7th Cir.1994). Legislation is frequently the product of compromises that are not readily apparent to the judiciary. Therefore, "[i]nvocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent." *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986). As this case demonstrates, many corporations operate under names that are not readily identifiable with those of their affiliates. Yet while Congress prescribed two conditions for the exclusion of corporate affiliates under § 1692a(6)(B), it did not prescribe the third condition that Aubert asks us to read into the statute.* Should Congress desire to eliminate this loophole, it is, of course, free to amend the FDCPA and add conditions to the § 1692a(6)(B) exclusion. We, however, do not enjoy that freedom. "We are bound by the particular rules enacted by Congress and are not free to carve out our own exceptions merely because we believe that they would best serve Congress' policies and goals." *Central States*, 22 F.3d at 710. We therefore hold that the district court appropriately granted summary judgment in favor of SBI.

Aubert also asserts that AGFC and its corporate parent, AGF, violated the FDCPA. As a creditor, AGFC is not independently subject to the Act because it was not collecting its own debt; rather, SBI was collecting the debt for AGFC. *See, e.g., Harrison*, 968 F.Supp. at 843 (holding that a creditor is not a "debt collector" under the Act "merely because it retains its corporate affiliate to collect its debt"). Aubert does not point to any provision in the Act that contemplates creditor liability under these circumstances. For the same reason AGF, which did not engage in any collection activity, is not subject to the Act either. Second, Aubert argues that the Court should disregard the corporate formalities of the three appellee corporations and hold them jointly responsible under the FDCPA because they "engage[d] in a single economic enterprise." Without regard to our holding that SBI itself is not covered by the Act, it is apparent that Aubert has presented no evidence, such as inadequate capitalization or a failure to observe the legal requirement of separate corporate existences, to justify the unusual rem-

---

* Our holding is further buttressed by the fact that § 1692a(6)(A) excludes "any officer or employee of a creditor while, in the name *of the creditor,* collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A) (emphasis added). When Congress wished to add an "in the name of the creditor" condition to an exclusion from the Act's coverage, it is apparent that it knew how to do so. *Cf. Central Bank v. First Interstate Bank,* 511 U.S. 164, 176–77, 114 S.Ct. 1439, 1447–48, 128 L.Ed.2d 119 (1994) (rejecting a private cause of action for aiding and abetting under § 10(b) of the Securities Exchange Act, in part by reviewing other statutory provisions and recognizing that "Congress knew how to impose aiding and abetting liability when it chose to do so").

edy of piercing the corporate veil. *See, e.g., Wiebke v. Richardson & Sons, Inc.,* 83 Wis.2d 359, 265 N.W.2d 571, 573 (1978); *see also* Fed.R.Civ.P. 56(e) (requiring the non-moving party to respond to a motion for summary judgment by setting forth facts that demonstrate that there is a genuine issue for trial). Thus, the district court appropriately granted summary judgment in favor of AGF and AGFC.

For the reasons stated above, we affirm the district court's award of summary judgment in favor of the appellees.