Brenda RANDLE and Pamala Edwards, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GC SERVICES, L.P.; DLS Enterprises, Inc., and GC Financial Corporation, Defendants.

No. 97 C 8054.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 15, 1998.

Cathleen M. Combs,· Daniel A. Edelman, James O. Latturner, Ignacio Daniel Maramba, Edelman & Combs, Chicago, IL, Charley Hoon Lee, Edelman & Combs, Chicago, IL, for Brenda Randle.

Charley Hoon Lee, Edelman & Combs, Chicago, IL, for Pamala Edwards.

George William Spellmire, David Matthew Schultz, John Matthew Foley, Hinshaw & Culbertson, Chicago, IL, for GC Services L.P., DLS Enterprises, Inc., GC Financial Corporation.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Brenda Randle and Pamala Edwards have filed a class action[1] complaint against defendants GC Services, L.P. ("GC Services"), DLS Enterprises ("DLS"), and GC Financial Corporation ("GC Financial"), alleging that DLS and GC Financial are general partners of GC Services, a Delaware limited partnership, and are therefore liable for the partnership's debt collection activities. Plaintiffs also allege that defendants have violated §§ 1692j and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Defendants DLS and GC Financial move to dismiss plaintiffs' claims against them under Fed. R.Civ.P. 12(b)(6), claiming that although they are general partners of G.C. Services, they are not "debt collectors" that can be sued directly under the FDCPA. Defendant GC Services moves to dismiss plaintiffs' FDCPA claims under Rule 12(b)(6) for failure to state a claim. As discussed below, both motions are denied.

### FACTUAL BACKGROUND

According to the amended complaint, plaintiffs are residents of Illinois. Defendant GC Services is a Delaware limited partnership and a "debt collector" under the FDCPA. Defendants DLS and GC Financial are Delaware corporations and general partners of GC Services.

Shortly after March 18, 1997, plaintiff Randle received a letter from defendants demanding payment for subscriptions to *Jet* and *Disney Adventures* magazines. Shortly after August 12, 1997, plaintiff Edwards received a substantially identical letter demanding payment for subscriptions to the periodicals *Nickelodeon* and *Animals*. The letters, copies of which were attached to the amended complaint as Exhibits A and B, state: "This is a demand made on behalf of Publishers Clearing House for payment on your delinquent balance.... If you do not pay promptly, Publishers Clearing House has informed us that your file will be referred to us or another collection agency which is properly authorized to undertake collection activity.... It is in your best interest to promptly mail your payment." Plaintiffs assert that the type of document represented by Exhibits A and B is a "precollection" letter which falsely suggests that a third party collection agency, GC Services, has become involved in collecting the debt. Plaintiffs further assert that GC Services has no information about the debt other than that reflected in the demand for payment.

### DISCUSSION

### I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World*, 73 F.3d at 1428.

### II. DEFENDANTS DLS AND GC FINANCIAL'S MOTION TO DISMISS

Defendants DLS and GC Financial argue that they are not "debt collectors" under the

---

**1.** On September 14, 1998, this court issued an opinion certifying the plaintiff class.

FDCPA, and therefore cannot be held liable under the Act. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendants argue that the Seventh Circuit's decision in *Aubert v. American Gen. Finance Inc.*, 137 F.3d 976 (7th Cir.1998), dictates a narrow definition of debt collector which does not include the general partners of a debt collector. Defendants' use of *Aubert* is inapposite. *Aubert* rested on the sentence in FDCPA § 1692a(6) that explicitly states that corporate affiliates of debt collectors are not necessarily liable as debt collectors. *See id.* at 978. The statute does not contain a similar provision absolving a debt collector's general partners of liability.

Plaintiffs allege that, as general partners of GC Services, DLS and GC Financial are responsible for and can be held liable for the debt collection activities of the limited partnership entity. They essentially allege that the general partners are "indirect debt collectors" under the Act. *See Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1142 (N.D.Ill.1998) (discussing whether a parent company is liable as an "indirect debt collector" for the acts of its subsidiary). Few courts have discussed whether the general partners of a limited partnership engaged in debt collection can themselves be held liable under the FDCPA. However, Judge Bucklo recently answered this question in the affirmative in a similar case pending against these same defendants. *See Peters v. AT & T,* 179 F.R.D. 564 (N.D.Ill.1998) (applying general principles of partnership law to deny DLS' and GC Financial's motion to dismiss).

■ The court agrees with plaintiffs that the "person" who engages in debt collection under the FDCPA is whoever is legally responsible for that act under general principles of law. The Seventh Circuit has suggested that general agency principles apply to suits under the FDCPA. *See Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.1997) ("If Heibl were being sued for conduct within the

scope of his agency or employment as a partner ... of a law firm, the firm could be named along with him as a defendant, because it would be liable jointly with him for that conduct."). Other courts have applied such general principles to hold employers vicariously liable for the acts of their employees in cases arising under the FDCPA. *See, e.g., Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354, 1370 (E.D.Cal.1995) ("The FDCPA is silent on the issue of vicarious liability. In this circuit, however, it is established that, under the FDCPA, a debt collector may be found vicariously liable for the conduct of its attorney."); *United States v. ACB Sales & Service, Inc.,* 590 F.Supp. 561, 575 (D.Ariz.1984) ("The FDCPA is enforced as a FTC rule under section 5(m)(1)(A) of the Federal Trade Commission Act. 15 U.S.C. § 16921. I find no distinction between enforcement of orders under section 5(1) and enforcement of the FDCPA under section 5(m)(1)(A) that would limit the application of the doctrine of respondeat superior."). The court therefore applies general principles of partnership liability to determine whether general partners DLS and GC Financial can be held vicariously liable for the debt collection activities of the limited partnership, GC Services.

■ Under Delaware partnership law and the Uniform Limited Partnership Act, § 403, 6 U.L.A. § 177 (1976) (amended 1985), defendants DLS and GC Financial are vicariously liable for the acts of the limited partnership, defendant GC Services. *Accord Peters,* 179 F.R.D. at 569. Delaware partnership law provides that "all partners are liable ... jointly and severally for everything chargeable to the partnership...." Del.Code.Ann. tit. 6, § 1515(a); *see also In re Phillips Petroleum Securities Litig.,* 738 F.Supp. 825, 837 (D.Del.1990) ("It is well-established that under the law of partnerships, knowledge and actions of one partner are imputed to all others. The partnership is liable for acts performed in its name and within the scope of its business, and the partners are liable for all debts and obligations of the partnership.") (citations omitted). The same liabilities apply to a general partner in a limited partnership. *See* Del.Code.Ann. tit. 6, § 17–403(b);

*see also* Unif. Limited Partnership Act § 403(b).

In addition, under Delaware partnership law, plaintiffs are entitled to sue both the limited partnership and its general partners. Delaware has a "common name" statute which allows a limited partnership to be sued as an entity. *See* Del.Code Ann. tit. 10, § 3904 ("An unincorporated association of persons, including a partnership, using a common name may sue and be sued in such common name...."). Such statutes "are permissive, not mandatory; suit may still be brought against the general partners ... liable for the partnership obligation." 4 *Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership* § 15.12, at 108 (1997). Under Delaware law, "[i]ndividuals comprising groups or associations may continue to be sued as individuals, just as individual partners may be sued without resort to the partnership name." *Furek v. University of Delaware,* 594 A.2d 506 (Del. 1991).

## III. DEFENDANT GC SERVICES' MOTION TO DISMISS

In essence, plaintiffs allege that GC Services is a sheep in wolf's clothing, a debt collection agency masquerading as a debt collector before it becomes actively involved in collecting consumers' debts. According to the complaint, GC Services' letters falsely represented that plaintiffs' debts had been assigned to GC Services for collection. Plaintiffs specifically claim that defendant violated the FDCPA by "furnishing deceptive forms" in violation of § 1692j and/or by using a "false representation or deceptive means to collect or attempt to collect [a] debt" in violation of § 1692e(10). The court must apply the "unsophisticated consumer" test to determine whether plaintiffs state a claim under the FDCPA. *Gammon v. G.C. Services Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir. 1994). This test looks to the "hypothetical consumer['s] ... reasonable perceptions ... to determine if collection messages are deceptive or misleading." *Id.*

## A. Claimed Violation of FDCPA § 1692j

Section 1692j(a) states:

It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

Defendant[2] advances two arguments in support of its motion to dismiss plaintiffs' § 1692j claim. First, defendant argues that to make out a claim under § 1692j, plaintiffs must allege that GC Services furnished the letter *to a creditor,* an allegation absent from plaintiffs' complaint. Second, defendant argues that, contrary to plaintiffs' allegation that GC Services was involved in collecting the debts, defendant could not have instilled a "false belief" in consumers that it was involved in collecting the debts.

Defendant's first argument interprets § 1692j in a way that is inconsistent both with the statute's plain language and with other courts' interpretations of the statute. Defendant contends that the legislative history of § 1692j dictates that only those who furnish misleading letters *to creditors* violate the act. According to defendant, because the complaint merely alleges that GC Services furnished such letters to consumers, GC Services cannot be held liable under § 1692j. Defendant's argument rests on a Delaware court's interpretation of § 1692j's legislative history. The history suggests that Congress passed § 1692j to combat "flat-rating," whereby a "flat-rater," masquerading as a debt collector, writes and mails "dunning letters" to debtors to intimidate them into paying the creditor. *See* S.Rep. No. 95–382, at 5, reprinted in 1977 U.S.C.C.A.N. 1695, 1699. *Anthes v. Transworld Systems, Inc.,* 765 F.Supp. 162 (D.Del.1991), interpreted the legislative history to mean that the FDCPA applies only to a third party who provides dunning letters to a creditor. *See id.* at 167–68 (quoting the FDCPA's legislative history

---

**2.** For this section of this opinion, GC Services will be referred to as "defendant."

as defining a flat-rater as "one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once"). Plaintiffs respond that *Anthes* misinterpreted the legislative history to limit the FDCPA to the particular fact situation that inspired the statute. Plaintiffs also argue that the court need not examine the legislative history defendant cites because the statute is unambiguous on its face.

■ The court must consider a statute's language first and foremost, and delve into legislative history only if the statute is facially ambiguous. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 520, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning."). In a case arising under a different provision of the FDCPA, the Seventh Circuit limited its discussion to the statute's language and refused to consider the legislative history. *See Jenkins v. Heintz,* 25 F.3d 536, 539 (7th Cir.1994) (discussing FDCPA § 1692a(6)), *aff'd on other grounds,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The plain language of § 1692j does not require the flat-rater to sell the form to the creditor. Rather, the statute's language focuses on the flat-rater's state of mind. The gravamen of the offense consists simply in creating and "furnishing" a form "knowing that such form would be used to create [a] false belief in a consumer." 15 U.S.C. § 1692j.

This interpretation comports with the general purpose of the FDCPA. When interpreting a statute, "a court must not be guided by a single sentence or member of a sentence, but look to the provision of the whole law, and to its object and policy." *Grammatico v. United States,* 109 F.3d 1198, 1204 (7th Cir.1997). The Seventh Circuit has explained that "[t]he primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices.... In the most general terms, the FDCPA prohibits a debt collector from using certain enumerated collection methods in its effort to collect a 'debt' from a consumer." *Jenkins,* 124 F.3d at 828. Liability under § 1692j therefore should rest on whether a defendant created and disseminated a letter with the intent to deceive consumers, not on the exact path this letter took in reaching the consumer.

■ Although the court need not address defendant's legislative history argument because the plain language of the statute is clear, other courts' interpretations of § 1692j lead the court respectfully to disagree with *Anthes'* conclusion. The Seventh Circuit has not interpreted § 1692j, but other courts have suggested that this section is not limited to situations in which a flat-rater supplies dunning letters to a creditor. The Fifth Circuit has found § 1692j liability even though the defendant furnished the letter to a debt collector rather than to a creditor. *See Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1237–38 (5th Cir. 1997) (holding an attorney liable under § 1692j because he supplied a dunning letter bearing his signature to a debt-collector but otherwise was not involved in collecting the debt).[3] Several district courts have likewise interpreted § 1692j more broadly than the *Anthes* court. In *Laubach v. Arrow Service Bureau, Inc.,* 987 F.Supp. 625 (N.D.Ill.1997), Judge Grady analyzed various decisions under § 1692j and concluded that "defendants generally incur liability under § 1692j where they actually write or otherwise originate the form letter." *Id.* at 630 (citing *Taylor,* 103 F.3d 1232; *Kohlenbrener v. Dickinson,* 1996 WL 137656 (N.D.Ill. March 25, 1996); *Littles v. Lieberman,* 90 B.R. 700 (E.D.Pa.1988)); *see also Weber v. Goodman,* 9 F.Supp.2d 163, 168 (E.D.N.Y.1998) (holding that "an outside company" is liable under this section if it "assist[s] the creditor in deceiving the least sophisticated consumer"). Plaintiffs have alleged that GC Services pursued a disingenu-

---

3. Under the FDCPA, attorneys may be held liable to the same extent and in the same manner as debt collectors. *See Jenkins,* 124 F.3d at 833 ("Congress in the FDCPA and the Supreme Court in its opinion in this case placed lawyers and lay debt collectors on equal footing."). *Taylor* is relevant to the court's analysis because the attorney in that case performed the same function GC Services allegedly performed in this case.

ous collection method which falls within the plain language of § 1692j and within other courts' interpretations of the statute.

■ Defendant's second argument misinterprets the complaint. Plaintiffs do not claim that GC Services created a false belief that it was "involved" in collecting the debts. Rather, plaintiffs allege that GC Services created a false belief that the debts had been assigned to them for collection and that they were "*participating* in the collection of ... [the] debt." 15 U.S.C. § 1692j (emphasis added). Plaintiffs contend that defendant's participation was limited to sending the letters to consumers, and that this does not amount to the sort of actual participation in debt collection that would exempt defendant from § 1692j liability. Defendant insists that the letters themselves demonstrate that GC Services was involved in debt collection because the letters include GC Services' return address and inform consumers that GC Services sent the letters to collect on their debts.[4] As plaintiffs point out, the letters' plain language defeats defendant's argument. Although the letters say, "If you do not pay promptly, Publishers Clearing House has informed us that your file *will* be referred to us or another collection agency ..." (emphasis added), the letters bear the letterhead of GC Services and state "you owe" in printed words, followed by "Publishers Clearing House" in typed words. The impression, as alleged by plaintiffs, is that GC Services is undertaking collection activities for Publishers Clearing House. Accepting as true plaintiffs' allegation that GC Services had not yet been assigned their accounts for collection when it sent the letters, the letters may well give the unsophisticated consumer the false impression that GC Services is actually participating in collecting the debt. The court therefore denies defendant's motion to dismiss plaintiffs' § 1692j claim.

## B. Claimed Violation of FDCPA § 1692e(10)

■ Section 1692e(10) forbids "the use of any false representation or deceptive means to collect or attempt to collect any debt...." 15 U.S.C. § 1692e(10). Defendant's motion to dismiss plaintiffs' § 1692e(10) claim rests on the same misreading of the complaint as the motion to dismiss the § 1692j claim. Defendant argues that by alleging that GC Services sent the letters, plaintiffs allege that GC Services was "involved" in collecting the debts, and that therefore GC Services cannot be held liable for misrepresentation. However, merely mailing letters is not the sort of meaningful participation in debt collection that absolves a defendant of § 1692 liability. *See, e.g., Laubach,* 987 F.Supp. 625 (holding that defendant's "label merging, letter printing, and mass mailing activities are not violations of 1692j"); *Trull v. Lason Systems, Inc.,* 982 F.Supp. 600, 607 (N.D.Ill.1997) (holding a printing and mailing service not liable for FDCPA violations because it "did not write, edit (beyond proofreading) or approve [the collection agency's] communications, or advise [the agency] about their content or use"). Although defendant's business is debt collection, it is simply masquerading as a debt collector if, as the complaint alleges, another party is performing all of the functions of debt collection.

The Seventh Circuit has interpreted FDCPA § 1692e to prevent third parties from sending letters that suggest to the unsophisticated consumer that "the price of poker has just gone up." *Avila v. Rubin,* 84 F.3d 222, 228 (7th Cir.1996). *Avila* held an attorney liable under § 1692e for sending letters to debtors which "create[d] the false and misleading impression that the communications were from an attorney when, in fact, they were not really 'from' an attorney in any meaningful sense of the word." *Id.* at 229. Plaintiff essentially alleges that GC Services' letters created the misleading impression

---

4. Defendant argues that the letters' text contradicts plaintiffs' allegations in the complaint. If certain allegations are inconsistent with the terms of a written document that is attached to or otherwise considered part of the complaint, the inconsistent allegations are not accepted as true, and the terms of the written document,

fairly construed, prevail. *Perkins v. Silverstein,* 939 F.2d 463, 469 n. 4 (7th Cir.1991); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 991 (7th Cir.1991). The court therefore considers the attached letters as well as the complaint itself.

that they were from a debt collector, when the letters were not actually "from" a debt collector in any meaningful sense of the word. Although *Avila* arose under §§ 1692e(3) and 1692e(9), its interpretation of these provisions rested on a Second Circuit case decided under §§ 1692e(3) and 1692e(10). *See Avila*, 84 F.3d at 228 (relying on *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir.1993)); *see also Clomon*, 988 F.2d at 1317–20 (holding an attorney liable under §§ 1692e(3) and 1692e(10) for signing and mailing dunning letters on his letterhead even though he was not directly involved in reviewing the debtor's file). The Fifth Circuit has likewise found § 1692 liability under a similar set of facts. *See Taylor*, 103 F.3d at 1237 (holding a debt collector liable under § 1692e(3) for sending a dunning letter signed by an attorney who had not reviewed the debtor's file). In sum, plaintiffs allege that GC Services' letter misled them into believing that it was meaningfully involved in collecting their debts. Contrary to defendant's assertion, a debtor would not have to be "a fool or an idiot," *Young v. Meyer & Njus, P.A.*, 953 F.Supp. 238, 240 (N.D.Ill. 1997), to draw this conclusion from GC Services' letter. Under *Avila*, plaintiffs have stated a valid § 1692e(10) claim. Defendant's motion to dismiss is therefore denied.