Andrew **PETERS**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**AT&T CORPORATION, GC Services Limited Partnership, DLS Enterprises, Inc., and GC Financial Corporation,** Defendants.

No. 97 C 8273.

United States District Court, N.D. Illinois, Eastern Division.

June 11, 1998.

96 F.3d 890 (7th Cir.1996).

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Adam Goodman, Edelman & Combs, Chicago, IL, for Andrew Peters.

John Henry Wickert, Fay Clayton, Michael R. LaPorte, Robinson, Curley & Clayton, P.C., Chicago, IL, for AT&T Corp.

David Matthew Schultz, John Matthew Foley, Robert H. Muriel, Hinshaw & Culbertson, Chicago, IL, for GC Services Ltd. Partnership, DLS Enterprises, Inc., GC Financial Corp.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

On November 26, 1997, the plaintiff, Andrew Peters, brought this action against the defendants, AT & T Corporation ("AT & T"), GC Services Limited Partnership ("GC Services"), DLS Enterprises, Inc. ("DLS"), and GC Financial Corporation ("GC Financial"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Mr. Peters seeks to certify this case as a class action. DLS and GC Financial move to dismiss the complaint against them. For the reasons set forth below, Mr. Peters' motion for class certification is granted and DLS' and GC Financial's motion to dismiss is denied.

### *Background*

Mr. Peters alleges that shortly after June 2, 1997, he received via the United States mail the collection letter attached to the complaint as Exhibit A. The letter was from GC Services, a collection agency, and sought payment of an AT & T residential long-distance telephone bill. There was no telephone number provided at which a consumer could contact GC Services. The letter allegedly encouraged consumers to call AT & T at a toll free phone number to inquire about the debt and to make payments to AT & T at a fictitious address. Mr. Peters claims that GC Services had no information about the debt beyond that appearing on the face of the letter.

The complaint alleges that AT & T seeks to have payments on delinquent accounts sent to Post Office Box 8211, Fox Valley, Illinois 60572–8211. To induce AT & T's customers to pay AT & T, AT & T and GC Services allegedly agreed to send or cause to be sent collection letters similar to the one in Exhibit A, which purport to emanate from GC Services. Mr. Peters claims, however, that GC Services had not been hired to perform any actual collection services for AT & T at the time the collection letters were sent. He says GC Services was merely lending its name to assist collection activities. AT & T, in the process of collecting its own debt, was allegedly using GC Services' name to indicate that a third person was collecting or attempting to collect such debts.

### *Class Certification*

Mr. Peters moves to certify this case as a class action. The proposed class consists of all persons (1) who were mailed a collection letter in the form represented by Exhibit A of the complaint, (2) which letter was not returned by the Postal Service, (3) on or after November 26, 1996, (4) in connection with a bill for residential phone service allegedly owed to AT & T.

To obtain class certification, Mr. Peters must satisfy the four requirements of Rule 23(a) and one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). The failure to meet any single requirement precludes class certification. *Id.* I find that Mr. Peters has met the requirements of Rules 23(a) and 23(b)(3).

#### *A. Rule 23(a)*

The four prerequisites for a class action under Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The only prerequisite that the defendants, GC Services, DLS, and GC Financial (collectively the "GC Defendants"),[1] challenge is the ability of Mr. Peters to fairly and adequately protect the interests of the class.

#### *1. Numerosity*

■ The numerosity requirement is met. AT & T is a large long distance telephone carrier. The collection letter sent to Mr. Peters is a form letter to collect amounts allegedly owed to AT & T. Based on these facts, it is reasonable to infer that many

---

1. AT&T does not contest class certification.

individuals received the form collection letter and that joinder of all the individuals would be impracticable.[2]

### 2. Commonality

To satisfy the Rule 23(a) commonality requirement, Mr. Peters need only demonstrate that at least one question of law or fact is common to all class members. *Spencer v. Central States, Southeast & Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 n. 2 (N.D.Ill.1991). In this case, the common questions of law or fact include: (1) whether GC Services plays a significant role in collecting debts that are the subject of the collection letters or is merely lending its name to AT & T; (2) whether AT & T is deemed a debt collector because it is using GC Services name; and (3) whether the form collection letters violate the FDCPA. Thus, the commonality requirement is satisfied.

### 3. Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions,* § 1115(b), at 185 (1977)). Here, each claim arises from the receipt of collection letters similar to the one Mr. Peters received that allegedly violate the FDCPA. Typicality is therefore established.

### 4. Adequacy of Representation

The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, ... (2) the named representative must have sufficient interest in the outcome to ensure vigorous advocacy, ... and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations

and quotations omitted). Mr. Peters has retained qualified counsel. (*See* Pl.'s App. C for qualifications). The GC Defendants argue, however, that Mr. Peters cannot adequately represent the class for three reasons.

First, the GC Defendants claim that Mr. Peters' conduct thus far shows his lack of interest and involvement in the case. By placing the collection letter on top of his drawer for a couple of months before taking any action, by failing to write GC Services, and by failing to call AT & T, they argue that Mr. Peters is irresponsible, apathetic, and insufficiently motivated to properly represent the class. They say that Mr. Peters has not sufficiently communicated with his attorneys, Edelman & Combs, because he has only met with them once and has only spoken to them on the phone for a total of less than ten minutes. Furthermore, Mr. Peters has only glanced at some documents and has not read all of them yet.

In Mr. Peters' deposition, he stated that although he placed the collection letter on his dresser and waited a couple of months before he took any action, he eventually took the letter to a lawyer, Eric Kelly, to work out a payment plan. Mr. Kelly informed him that he might have a lawsuit and referred him to Adam Fishbein. Mr. Fishbein in turn referred him to his present lawyers, Edelman & Combs. Mr. Peters has pursued all suggested avenues since he was first informed that he might have a lawsuit and this indicates that he is anything but apathetic to this suit.

Mr. Peters is a resident of New York State. He reviewed the complaint in this case. He traveled to Chicago for his deposition. His willingness to travel to Chicago indicates that he is sufficiently interested in the case and can represent the class. Furthermore, because Mr. Peters is from New York, most of his initial conversations about this case were with his attorneys in New York. It is not surprising then that his communications with Edelman & Combs have not been substantial since they were the third attorneys that Mr. Peters spoke to and eventually hired.

---

**2.** Mr. Peters has propounded discovery to determine the exact number of class members.

Second, the GC Defendants claim that Mr. Peters lacks a basic understanding of the allegations in his complaint. They claim that Mr. Peters does not know why two of the named defendants, GC Financial and DLS, are being sued nor does he understand the alleged FDCPA violations. They argue that Mr. Peters is blindly relying on his attorneys.

It is not unreasonable for Mr. Peters to rely on his counsel to inform him that GC Services is a limited partnership and that as the general partners, GC Financial and DLS may be liable. Furthermore, contrary to the defendants' assertions, I find that Mr. Peters' answers in his deposition sufficiently indicate that he understands the complaint's allegations.

Finally, the GC Defendants claim that Mr. Peters' lack of monetary injury indicates that he does not have the same interest nor does he suffer the same injury as the class members and would be unlikely to accept a monetary settlement that would benefit the class. In this case, however, the injuries alleged are the receipt of collection letters which allegedly violate the FDCPA. Mr. Peters received such a letter and thus is a member of the class. Furthermore, his interest in this suit is the same as other members of the class— he seeks statutory damages. His monetary interest in bringing this claim is the same as other members of the class who might receive both actual and statutory damages.

### B. Rule 23(b)(3)

■ Rule 23(b)(3) requires that the common questions of law and fact predominate and that a class action is superior to other forms of adjudication. There is a common factual link among the plaintiffs in the class: they all received a similar collection letter allegedly from GC Services. The common question of law is whether or not this letter violates the FDCPA. Additionally, a class action is the superior means for adjudicating this case. The FDCPA specifically contemplates class actions. *See* 15 U.S.C. §§ 1692k(a)(2)(B) & (b)(2). Many plaintiffs may not know their rights are being violated, may be unable to hire competent counsel to protect their rights, and may not have a monetary incentive to individually litigate their rights given the small amounts at stake. *See id.* § 1692k(a) (amount of damages). A class action ensures that the plaintiffs' rights are vindicated and promotes judicial efficiency by adjudicating thousands of potential individual suits in one action.

### Motion to Dismiss

■ The FDCPA imposes liability on a "debt collector." 15 U.S.C. § 1692k. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). GC Services admits that it is a debt collector.

GC Services is a limited partnership. Its alleged general partners are DLS and GC Financial (collectively "General Partners"). The General Partners move to dismiss the complaint against them stating that it fails to allege that either of them were involved in GC Services' attempt to collect Mr. Peters' debt. They argue that they are not debt collectors and that Mr. Peters seeks to impose liability on them solely by virtue of their affiliation as general partners of GC Services. The law that they rely on is general corporate law dealing with piercing the corporate veil and with determining when a corporate officer, director, or shareholder is personally liable. This law, however, is not applicable to determine liability in the context of a limited partnership.

To determine whether the General Partners are vicariously liable for the acts of GC Services under the FDCPA, the court should look to general partnership law. *See, e.g., Bartlett v. Heibl,* 128 F.3d 497, 499–500 (7th Cir.1997) (looking to general principles of agency law to find that if a lawyer "were being sued for conduct within the scope of his agency or employment as a partner or an associate of a law firm, the firm could be named along with him as a defendant, because it would be liable jointly with him for that conduct"). GC Services is a partnership organized under Delaware law. Under Dela-

ware partnership law, "a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners." Del.Code.Ann. tit. 6, § 17–403(b). A partner in a partnership is "liable ... [j]ointly and severally for everything chargeable to the partnership...." *Id.* § 1515(a). General partnership principles are in accord. *See, e.g.,* Unif. Limited Partnership Act § 403(b) (amended 1985) ("[A] general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners."); Unif. Partnership Act § 306(a) (amended 1996) ("[A]ll partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.").

The General Partners counter that even if they are potentially jointly and severally liable, GC Services' conduct in this case exceeded the scope of its authority under the partnership agreement. They claim that GC Services had the authority to undertake ordinary collection activities but not to conspire with AT & T to perform illegal acts and thus, they are not liable for its actions. In the complaint, however, Mr. Peters alleges that GC Services and its general partners permitted the collection letters to be used. (Compl.¶ 27). Viewing the complaint in light most favorable to Mr. Peters, GC Services' conduct was within the scope of its authority and thus, the General Partners cannot be dismissed since they are potentially liable jointly and severally for the acts of GC Services.

### Conclusion

Mr. Peters' motion for class certification is granted. DLS' and GC Financial's motion to dismiss them from this action is denied.