Kevin ALSTON and Sandra Alston, as next friend of their minor daughter, Ashley Alston, et al., Plaintiffs,

v.

VIRGINIA HIGH SCHOOL LEAGUE, INC., Defendant.

No. CIV. A. 97–0095–C.

United States District Court, W.D. Virginia, Charlottesville Division.

March 31, 1999.

Mary Catherine Bauer, Aclu of Virginia Foundation, Richmond, VA, Deborah C. Waters, Rutter & Montagna, L.L.P., Norfolk, VA, Kristen Galles, Equity Legal, Alexandria, VA, for Kevin Alston, Sandra Alston, Ashley Alston, Louis King, Betty King, Carla King, Nils Melkerson, Nancy Melkerson, Julie Melkerson, Robert Meinertzhagen, Mary Meinertzhagen, Sarah Meinertzhagen, Penny Sherard, Chris Sherard, Rebecca E. Sherard, Kathy Grady, Robert Grady, Megan Grady, Peggi Parker–Butler, Gary Butler, Catherine Butler, Robert Stevens, Polly Stevens, Anna Stevens, Duane E. Outlaw, Susan Outlaw, Lori M. Outlaw, Philip C. Forbes, Sharon L. Forbes, Brooke K. Forbes, Michael Sklar, Darlene C. Sklar and Melissa Ann Sklar, for plaintiffs.

James M. Johnson, Robert Craig Wood, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Virginia High School League, Inc., for defendants.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court is plaintiffs' motion for class certification, supported by plaintiffs' brief and responsive memoranda and opposed by defendant's memoranda. Because the court finds that plaintiffs have failed to meet their burden of demonstrating that

plaintiffs' claims are typical of those of the proposed class and that plaintiffs will adequately protect the interests of the class, the court will deny plaintiffs' motion for class certification.

### I.

On August 19, 1997, plaintiffs, as next friends of their minor daughters, brought this action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983, alleging that the defendant has denied certain female athletes in the Commonwealth of Virginia's public high schools equal treatment, opportunities and benefits based on their sex in violation of Title IX and the Equal Protection Clause of Amendment XIV of the United States Constitution. According to the complaint, plaintiffs in this action are the parents of minor girls enrolled in various public high schools in Virginia. The defendant, the Virginia High School League, Inc. ("VHSL"), is an incorporated association of several hundred high schools which administers interscholastic athletic competition in Virginia. The plaintiffs allege that VHSL's system of scheduling athletic seasons constitutes intentional sex discrimination against certain female athletes.

Specifically, plaintiffs assert that VHSL's scheduling practices treat boys' sports differently than girls' sports, forcing some girls to stop playing sports they previously were able to play while no boys are ever forced to stop playing sports solely because of scheduling changes. VHSL uniformly schedules boys' sports such that each sport is played in the same season across the A, AA and AAA divisions, which correspond to school size. Boys' basketball, for example, is played during the winter season at all public schools regardless of division classification. The schedule for girls' sports, however, varies depending on the division classification of the school. For example, girls' basketball is played in the fall for divisions A and AA schools, but in the winter for division AAA.[1]

Plaintiffs argue that upon reclassification into a new division, some female high school athletes who play multiple sports are forced to give up sports they previously played due to the scheduling conflict newly created by reclassification.[2] Reclassification of a school from one division to another has, as one byproduct, the effect of changing the seasons in which certain girls' sports are played at a school, such that some girls' sports, previously scheduled in different seasons, now occur in the same season. For example, at a school which is reclassified from AA to AAA, field hockey and volleyball, previously played in two different seasons, would now be played in the same season. The newly-created conflict due to reclassification would force girls who previously were able to play both field hockey and volleyball to give up one or the other. The girls' sports for which the seasons could change after reclassification are basketball, tennis and volleyball. No boys' sports change season after reclassification because boys' sports are played in the same season no matter what division a school plays in.

The plaintiffs allege that the combined effect of VHSL's scheduling of girls' and boys' sports and its periodic reclassification of schools is discriminatory because after reclassification, no boys' sports change season as girls' sports do. Allegedly, no male high school athletes face the same dilemma as these plaintiffs because the season for each boys' sport is uniform across the A, AA and AAA divisions.[3] As a result, when a school is

---

1. The underlying reason for this difference in scheduling the seasons for boys' and girls' sports is a disputed issue in the case, although the court has received some evidence that the scheduling practice is in response to the limited availability of school athletic facilities.

2. Reclassification occurs every two years based on changes in enrollment numbers at the schools across the state. An average of ten schools are reclassified every two years. In theory, the same

school could be reclassified twice within four years.

3. Of course, neither boys nor girls are able to elect to play a combination of whichever sports they choose; all must select their sports taking into account the seasons in which sports are played; and no boy nor girl student-athlete may play two sports which occur in the same season. The difference for the girls is that, after they have made their selection once based on the current seasons in which sports are played at their

reclassified, its male athletes can continue playing the sports they previously selected, while some of its female athletes may have to give up one or more sports. This disparate impact, plaintiffs claim, constitutes a violation by VHSL of Title IX and the Equal Protection Clause. The forced choice between sports imposed on girls, but not boys, results in the following damages, according to plaintiffs: (1) lost opportunities to play through all four years of high school the sports which they originally chose; (2) reduced opportunities to obtain college athletic scholarships; and (3) emotional distress arising from the claimed unequal treatment.

Preliminary to trial, plaintiffs seek class action certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. Plaintiffs propose the following class definition:

> All present and future female students enrolled in Virginia public schools who participate in interscholastic athletics or who are deterred from participating in interscholastic athletics because of Defendants' discriminatory scheduling practices.[4]

The court heard testimony and oral argument on the issue of class certification at a hearing on December 14, 1998. At the hearing, the court heard the testimony of fact witnesses, including several of the female high school student-athletes whose parents are plaintiffs, and Ken Tilley, Executive Director of defendant VHSL. The court also received evidence through expert testimony by Kevin Alston and David Nelson[5] on behalf of plaintiffs and by Dr. Carolyn Callahan on behalf of defendant. Mr. Alston, an assistant principal, former high school athletic

director and Title IX coordinator, as well as one of the plaintiffs, was accepted as an expert in the areas of high school coaching and VHSL governance. Mr. Nelson, a current high school athletic director, former member of the VHSL executive committee and coach, was qualified as an expert in high school education, Virginia athletics, coaching, reclassification, and VHSL governance.[6] Dr. Callahan of the Curry School of Education at the University of Virginia, who designed a survey of public high school girls' attitudes toward the VHSL scheduling practices complained of by plaintiffs, was accepted as an expert in surveying attitudes and preferences of adolescents in relation to athletics, education, and gender equity.

## II.

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). First, the party seeking certification has the burden of showing that it meets *all four* of the prerequisites to a class action, set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

school, they may have to revise their selection upon reclassification, when those seasons change. Giving up a sport they had already played for one or more years in high school is the asserted disadvantage imposed on girls but never on boys under VHSL's scheduling system.

**4.** This description of the proposed class comes from plaintiffs' Motion for Class Certification. It differs slightly from the description of the class found in plaintiffs' complaint, which did not include those "deterred from participating" in interscholastic athletics due to VHSL's allegedly discriminatory scheduling practices. The description in the complaint also referred to "division realignment," which is more correctly

called reclassification by defendant. Because the court finds that plaintiffs fail to meet at least two of the prerequisites to class certification regardless of which of these two proposed descriptions of the class is used, the court will accept the more recent (and more informed by discovery) description of the class.

**5.** Mr. Nelson's expert testimony was received via videotaped deposition, reviewed by the court after the class certification hearing.

**6.** Mr. Nelson's qualifications are based on the stipulation of counsel for defendant at the deposition.

Fed.R.Civ.P. 23(a); *see* 7A Charles Alan Wright *et al.*, Federal Practice and Procedure § 1759 (2d ed.1986). Second, the party seeking certification must fit *at least one* of the three possible categories for maintaining a class action described in Rule 23(b). *See* Wright at § 1759. Plaintiffs rely on 23(b)(2), which provides that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Fed.R.Civ.P. 23(b)(2).

Only two of the prerequisites to class certification are contested here: typicality and adequacy. Therefore, the court will presume all other requirements for class certification have been met and discuss only these two contested requirements.

The typicality and adequacy requirements overlap such that discussion of each separately, particularly in this case, makes little sense. Both requirements "look to the potential for conflicts in the class." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 611, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting from the Third Circuit's opinion below in that case).

■ In making the appropriate inquiry as to Rule 23(a)(4), adequacy, the district court should seek to "uncover conflicts of interest between named parties and the class they seek to represent," and ask whether class representatives " 'possess the same interest and suffer the same injury' as the class members.' " *Id.* at 625–26, 117 S.Ct. 2231 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)); *see also Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 337 (4th Cir.1998) (relying on *Amchem* and *East Tex. Motor Freight System*). In *Broussard*, the Fourth Circuit reversed the district court's certification of a class, holding that the adequacy requirement was lacking because the remedy sought by plaintiffs was "antithetical to the long-term interests of a significant segment of the putative class" and would foreclose the remedy which that segment would have preferred. 155 F.3d at 339.

■ Similarly, the existence of adversity between named representatives and absent class members usually undermines attempts to meet the typicality requirement. *See* Wright at § 1764. In *Broussard*, the Fourth Circuit found typicality was lacking, as well as adequacy. 155 F.3d at 340. The court described the typicality requirement as ensuring "that only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* In other words, typicality exists if "as goes the claim of the named plaintiff, so go the claims of the class." *Id.* Among the various differences found by the court in *Broussard* between the claims of plaintiffs and the claims of the class were the individualized nature of the damages claimed and "the unique circumstances pertinent to each class member." *Id.* at 343. The court was also careful to note that the typicality element does not require that all members of a proposed class "have identical factual and legal claims in all respects." *Id.* at 344.

■ Even in the context of class actions alleging discrimination on the basis of sex or gender, the typicality and adequacy requirements must still be met with something more than a mere allegation of across-the board discrimination. *See Adams v. Bethlehem Steel Corp.*, 736 F.2d 992 (4th Cir.1984). A putative class representative cannot succeed in meeting the typicality requirement just because discrimination is alleged. *See id.* at 994. The "across-the board" theory for class certification has been rejected by the Supreme Court as well as the Fourth Circuit. *See id.* (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). If the mere allegation that discriminatory practices in general cause injury to all members of the class could suffice to show typicality, the typicality requirement would be eviscerated by allowing even the most remote similarity of interests between class representatives and other members of the class to qualify as the basis for class certification. *See id.* at 995 (quoting *Hill v. W. Elec. Co.*, 596 F.2d 99, 101–02 (4th Cir.1979), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979)). Cases predating

*Adams* and *Falcon,* which suggested that the court should not consider the fact that some members of the class are satisfied with the same actions that have aggrieved other members, must be reconsidered in light of more recent decisions. *See, e.g., Norwalk Core v. Norwalk Redevel. Agency,* 395 F.2d 920, 937 (2d Cir.1968) ("The fact that some members of the class were personally satisfied with the defendants' relocation efforts is irrelevant."), and *Moss v. Lane,* 50 F.R.D. 122 (W.D.Va. 1970), *aff'd & remanded,* 471 F.2d 853 (4th Cir.1973) (court certified class despite affidavit of other members of the proposed class stating that plaintiffs did not have their approval in bringing suit).

■ In this case, there is unrebutted evidence of a conflict of interests between the named plaintiffs and other members of the class which precludes certification under Rule 23. The results of the survey related to the court by defendant's expert indicate that plaintiffs do not adequately represent the interests of all the members of their class and that plaintiffs' claims are not typical of their class. A majority of the female public school athletes surveyed expressed a desire to preserve the status quo, meaning that most would not favor the injunctive relief sought by plaintiffs. There is a clear division in the class between those girls whose schools have already been subject to reclassification and those girls whose schools could, potentially, at some future time, be subject to reclassification. Those who have never experienced reclassification prefer not to have the entire system changed to suit the student athletes who have had to stop playing one or more of their preferred sports due to reclassification. Logically, if statewide realignment occurred, many more girls would be faced with the necessity of changing which sports they play.

Evidence of this conflict between the interests of the plaintiffs and those of other members of their class comes from plaintiffs' own expert witnesses, as well as defendant's expert. Mr. Nelson acknowledged in his deposition that there is a conflict between satisfying the majority of the girls in the class and satisfying these plaintiffs. Similarly, Mr. Alston conceded under cross-examination that there is a conflict in the interests of these plaintiffs and the majority of girls in the proposed class.

This conflict prevents plaintiffs from satisfying the typicality requirement as well as the adequacy of representation requirement. Plaintiffs have presented nothing to dispel the defendant's suggestion that there is a schism between girls who may benefit from reclassification and those who are injured by reclassification. A girl who could not previously play two sports because they occurred in the same season may be able to play those two sports when a school is reclassified and the seasons for some sports change. Such girls would not bring claims like the ones brought here by plaintiffs. Thus it cannot be said that as goes the claim of these plaintiffs, so go the claims of all others in the class.

Common sense readily suggests that there are members of this class who would not favor the relief requested by plaintiffs. Plaintiffs in this case seek declaratory and injunctive relief, forcing defendant to realign the schedule for girls' athletics so that, like boys' athletics, sports are played in the same season across all divisions. Such a change would create the very form of upheaval plaintiffs characterize as damaging to them, only on a statewide level rather than one school at a time. Therefore, the requested relief will not benefit all other persons subject to the practice under attack, as required in a class action. *See* Wright at § 1771.

The only arguments offered by plaintiffs to rebut the results of the survey are unavailing. Plaintiffs suggest that because defendant's practices are discriminatory and violate the law, the changes they propose must be accepted even by other members of the proposed class who oppose such changes. This argument resembles the "across-the-board" theory and cannot be accepted by the court as grounds for class certification in light of *Adams* and *Falcon.* 736 F.2d 992 and 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740. Plaintiffs go so far as to assert that what other members of the class want is irrelevant. Clearly, Rule 23(a), with its typicality and adequacy requirements, does not allow certification of a class without regard for the interests of all members of that class.

Regard for the interests of all members includes not only regard for legal theories viewed in a vacuum or notions that alignment would be more fair in the abstract, but also regard for the specific remedies sought by class representatives as compared to the remedies favored by other members of the class.

Plaintiffs also propose that because other courts have certified classes in cases alleging violations of Title IX, this court must certify the class in this Title IX suit as well. None of the factors described in the Federal Rules, as interpreted by the courts, suggests that this consideration should be weighed by the court to the slightest degree. Certification is a case-by-case analysis and there are no legal claims which automatically bind the court to certify any and every class bringing those claims.

Plaintiffs also find fault with defendant's survey as biased and unrepresentative of class members who are more familiar with the effects of reclassification. Plaintiffs highlight one portion of the survey results which indicates that girls favor alignment in the abstract as more fair, but would like to ignore the rest of the survey as biased because it does not support their position. The court would remind plaintiffs that they, and not defendant, bear the burden of showing that all requirements under Rule 23 have been met. Plaintiffs could have designed and conducted their own survey, or simply gathered individual opinions expressed in affidavits by other girls who are not plaintiffs but are class members. But plaintiffs chose not to do so, and presented very little in the way of evidence of attitudes and interests of girls other than those named in the lawsuit. The court cannot invent evidence that plaintiffs failed to supply and therefore finds no reason to doubt the validity and merit of defendant's survey results.[7]

For all of these reasons, the class proposed by plaintiffs for certification cannot be accepted by this court as one which fits all the requirements of the Federal Rules. These plaintiffs will not be able to adequately represent the interests of other members of the class who clearly do not favor the remedies sought be plaintiffs. Furthermore, because there is a possibility, unrebutted by plaintiffs, that some girls benefit from and prefer the current scheduling practices of the defendant, the claims of these plaintiffs are not typical of those that would be brought by other members of the proposed class.

### III.

◼ Plaintiffs have proposed, in the event that this court declines to certify the class described in their motion for class certification, that a narrower sub-class be certified. This narrower class would consist of "all present and future female athletes enrolled in Virginia public schools who are forced to choose between or among sports because of Defendant's discriminatory scheduling practices." Plaintiffs contend that so defining the class will eliminate any problems in meeting the typicality and adequacy of representation requirements.

Where it is clear that a sub-class is not adequately represented by the named plaintiffs, the court may dismiss the action, or allow it to continue as an action solely for the benefit of the named plaintiffs, or establish sub-classes or narrow the class to those who would be adequately represented by named plaintiffs. *See* Wright at § 1765 (citing, *inter alia, Long v. Robinson,* 436 F.2d 1116 (4th Cir.1971)). However, the narrowed sub-class must still meet all four of the requirements of Rule 23.

Even this narrower class—proposed by plaintiffs only after full briefing of the issue by both sides and presentation of oral argument and evidence at the hearing—fails to

---

**7.** Plaintiffs have also asserted that unless the court certifies the proposed class, defendant will be able to perpetually thwart their efforts by using delaying tactics until the current plaintiffs graduate and then claiming mootness. Defendant answers this baseless fear, not only by reassuring plaintiffs and the court that it would not engage in such dubious tactics, but also by citing

legal authority for the proposition that relief for past violations of rights can be granted even after those whose rights were violated have left the discriminatory environment or setting. *See Fox v. State Univ. of N.Y.,* 42 F.3d 135, 141 (2d Cir.1994). Clearly if plaintiffs prevail on the merits, relief can be granted even after they have graduated from high school.

meet all of the prerequisites to certification. The court finds at least two indicators that conflicts of interests exist even among members of the narrower class. First, Mr. Alston invited parents of other girls at the same school as his daughter, who also had to choose between sports after the 1996 reclassification, to join this lawsuit. At least half of the nineteen or twenty girls whose parents were approached declined to join the lawsuit. While Mr. Alston suggested in his testimony that the reason behind the decision of some of those who decided not to sue related to financial concerns rather than lack of interest, he also stated that others did not join the lawsuit because they made the choice between conflicting sports by "following a friend." In his deposition, Mr. Alston stated simply that those who didn't join the lawsuit "decided not to." Mr. Alston's speculation as to the reasons for the failure of other parents of girls similarly affected by reclassification to join the lawsuit have not been supported by any additional evidence directly manifesting those girls' actual interests and rationales. Second, the results of the survey suggest that there is a strong chance that some girls who declined to join the lawsuit did so because they, like a majority of female high school athletes in Virginia, do not share the goals and interests of these plaintiffs.

Plaintiffs have the burden of showing, by more than mere speculation on the part of plaintiffs themselves, that the interests of all members of the proposed class, even as narrowed, are not in conflict with their own. Because the inferences to the contrary have not been effectively rebutted by plaintiffs, plaintiffs have failed to meet their burden. Therefore, the court will decline to certify the narrower, sub-class proposed by plaintiffs in the alternative. The court will allow the suit to go forward with plaintiffs as representatives only of themselves.

## IV.

Plaintiffs have not succeeded in showing that they will adequately represent the interests of all members of any of the classes they have described. They also fail to meet the typicality requirement for class certification. Because adequacy and typicality are both prerequisites to class certification, these failings are dispositive of their motion for class certification.