Joseph TALBOTT, on behalf of himself and all others similarly situated, Plaintiffs,

v.

GC SERVICES LIMITED PARTNERSHIP, Defendant.

No. 4:97CV00010.

United States District Court, W.D. Virginia, Danville Division.

Feb. 9, 2000.

Dale Wood Pittman, Petersburg, VA, O. Randolf Bragg, Horwitz, Horwitz & Assoc., Ltd., Chicago, IL, for plaintiffs.

James C. Skilling, Cherry, Seymour & Skilling, Richmond, VA, for defendant.

### MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now is a motion for class certification by Joseph Talbott ("Talbott" or the "plaintiff"). Both parties fully briefed the issues and were heard in oral argument, ripening this motion for disposition. For the reasons set forth herein, the plaintiff's motion is **GRANTED** in that a conditional class certification is ordered.

### I. BACKGROUND

This case involves the debt collection practices of GC Services. GC Services mailed a dunning letter to certain Virginia residents to collect money allegedly owed MCI for telephone services. In granting Talbott partial summary judgment this Court ruled that the dunning letter violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (1998) ("FDCPA") because it contained language overshadowing the validation notice.[1]

Talbott proposes the following class for certification: persons with Virginia addresses that were mailed the GC Services dunning letter and that mailed letter was not returned by the Post Office as undeliverable. The letter must have been mailed in connection with an attempt to collect a debt shown by GC Services' records to be primarily for personal, family, and household purposes. A person will be in the class if he fits those parameters within a one year period prior to the filing of this action.[2] This group is referred to as the Virginia Class Members ("VCM"). Talbott asks, on behalf of the proposed class, for statutory damages of up to 1% of GC Services' net worth (not to exceed $500,000) and asks for a declaratory judgment that GC Services' practices violate the FDCPA.

### II. DISCUSSION

■ To determine if a class should be certified, the court "should accept as true the plaintiff's allegations concerning the merits of the case." *D'Alauro v. GC Serv. Ltd. Partnership*, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citing to *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Congress expressly recognized the propriety of a class action under the FDCPA by providing for special damages in those cases. *See* 15 U.S.C. § 1692k(a)-(b). Talbott accurately cites case law certifying classes based on FDCPA violations, *see* Pl. Mem. Supp. Mot. Class Certification at 4, and points out that class actions may be particularly useful devices to enforce consumer protection laws. A conditional certification prior to a decision on the merits is appropriate. *See* Fed.R.Civ.P. 23(c)(1).

In a FDCPA class action, the named plaintiff may recover statutory damages up to $1,000 for himself. *See* 15 U.S.C. § 1692k(a). For the class as a whole, damages are capped at $500,000 or 1% of the net worth of the defendant, whichever is less. *Id.* Actual damages are also available, *see id.*, but are not sought for Talbott's proposed class.

A two-step analysis is required to determine if a class certification is appropriate.

---

1. That decision also rules that GC Services' 35% collection fee was reasonable. *See Talbott v. GC Servs. Ltd. Partnership,* 53 F.Supp.2d 846 (W.D.Va.1999).

2. The statute of limitations period under the FDCPA is one year from the date of the alleged violation. *See* 15 U.S.C. § 1692k(d).

*See* Fed.R.Civ.P. 23. Talbott successfully meets his burden to show that certification is proper by meeting these two steps.

### A. *Fed.R.Civ.P. 23(a) is Satisfied*

A party proposing class certification must meet all four criteria in Rule 23(a):

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### i. *Numerosity*

 Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Where the class is twenty-five or more, joinder is usually presumed impracticable. *See Cypress v. Newport News General & Nonsectarian Hosp. Ass'n.,* 375 F.2d 648, 653 (4th Cir.1967) (18 sufficient); *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D.Fla.1986) (25 sufficient). The court may certify a class based on a common sense estimation of the class size if the precise number of class members is unknown. *See Evans v. U.S. Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983); *McGlothlin v. Connors,* 142 F.R.D. 626, 632 (W.D.Va.1992) ("It is not necessary that plaintiffs know precisely the size of the class, rather it is necessary only to show that the class is so large as to make joinder impracticable."); *Brady v. Thurston Motor Lines,*

726 F.2d 136, 145 (4th Cir.1984) ("The fact that now, several years after certification, few class members have asserted claims does not make the certification an abuse of discretion.").

 GC Services' representative Michael Sullivan, a special projects manager, testified that in "an average month, we will send hundreds of thousands of collection letters for all our clients" and that it is "most likely" each new account receives a dunning letter like the one at issue in this litigation. Sullivan Dep. at 12–13. GC Services says that between March 1996 and December 1996 MCI placed with GC Services 157,807 residential accounts *nationwide* but that "GC Services is not able to determine from its business records ... how many *Virginia* residential MCI accounts were placed with GC Services during that same time period." *See* Pl. Mem. Supp. Mot. Class Certification, exh. 1 (emphasis added).[3] The dunning letter in question was discontinued after December 1996. *See* Sullivan Dep. at 9.

 These facts are sufficient for the court to presume numerosity. Another recent decision reaches a similar conclusion:

> The numerosity requirement is met. AT & T is a large long distance telephone carrier. The collection letter sent ... is a form letter to collect amounts allegedly owed to AT & T. Based on these facts it is reasonable to infer that many individuals received the form collection letter and that joinder of all the individuals would be impracticable.

*Peters v. AT & T Corp.,* 179 F.R.D. 564, 566–67 (N.D.Ill.1998) (footnote omitted). Similarly, the number of nationwide mailings on behalf of MCI's accounts permit a reasonable conclusion that numerosity is satisfied.[4] The

---

3. Sullivan testified that "I don't have any way to tell you how many accounts in a particular area received this letter. It's not a criteria for searching in our main-frame system." Sullivan Dep. at 17.

4. Methods to determine the number of VCM were discussed at oral argument. For instance, Talbott suggests that simply dividing the nationwide letters by fifty (the number of states) yields roughly 3,000 VCM, a sufficiently high number. Estimates from the United States Bureau of the Census say that Virginia includes 2.55% of the nationwide population, *see.* <<http://www.census.gov>> (visited Feb. 4, 2000), yielding an estimated 4,000 VCM. Talbott threatens to request, should the court grant certification, an order permitting computer expert retrieval of the state-specific information. This type of discovery, as well as a subpoena of MCI's records, have been available to Talbott while this motion was pending. Talbott's theory encouraging a *presumption* of numerosity, nevertheless, presently suffices.

present inability to specifically identify the proposed class members "supports rather than bars the bringing of a class action," *Doe v. Charleston Area Med. Center, Inc.*, 529 F.2d 638, 645 (4th Cir.1975) (citations omitted), particularly in light of the court's power to modify the class in the future, *see Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D.Colo. 1990) (ability to modify suggests that a court err in favor of certification).

### ii. *Commonality*

■■■ Fed.R.Civ.P. 23(a)(2) requires *a* common question of law *or* fact to exist throughout the class. *See Daigle*, 133 F.R.D. at 603 ("To satisfy the commonality and typicality requirements, either common questions of law or fact ... will be deemed sufficient.") (citations omitted). The "claims of individual class members do not have to match precisely." *D'Alauro*, 168 F.R.D. at 456. Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases. *See Peters*, 179 F.R.D. at 567; *D'Alauro*, 168 F.R.D. at 456 (commonality exists "where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing"); *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, n. 4 (N.D.Ill.1995) ("the fact that GC Services sent the same standard debt collection letter to all members of the proposed class suffices to" satisfy the commonality requirement); *West v. Costen*, 558 F.Supp. 564, 572–73 (W.D.Va.1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices).

■■■ Because all proposed VCM were sent the standardized collection letter (not returned as undeliverable) the VCM claims invoke the common question of whether GC Services' standardized practice violates the FDCPA. *See Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 596 (E.D.Cal. 1999). GC Services, nevertheless, argues that commonality fails because Talbott actually received his letter whereas the proposed class membership merely presumes actual receipt. GC Services' position fails. For

instance, other courts apply a presumption of receipt when presented with similar facts, *see Ballard*, 186 F.R.D. 589; *D'Alauro*, 168 F.R.D. 451, in a way that follows the established principle that an item mailed is presumed delivered and received. *See e.g.,* Fed. R.Civ.P. 6(e) (enlarging time when service effected by mail). This presumption of receipt is applicable to the case at bar. Talbott could, moreover, require a potential VCM to file an affidavit that the letter was actually received.[5]

Because it seems that a plaintiff need not actually read the letter, *see Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997) (reading is not an element of the FDCPA violation); *Morgan v. Credit Adjustment Bd.*, 999 F.Supp. 803, 805 (E.D.Va.1998) (FDCPA liability does not require showing the consumer read or received the dunning letter), whether a VCM actually received the letter is not dispositive.

■■■ GC Services' argument that Talbott's damages are not common to those suffered by the VCM is no bar to certification, as illuminated by a Seventh Circuit decision. In *Keele*, the named plaintiff received a collection letter that included the amount of the debt as well as the amount of the collection fee. The named plaintiff paid the debt amount, but did not pay the collection fee. The named plaintiff sought statutory and actual damages under the FDCPA, plus fees and costs. Certification was awarded for a class defined as those who received the same collection letter. *Keele v. Wexler*, 149 F.3d 589, 591–92 (7th Cir.1998). Whether the collection fee was actually paid was irrelevant because all class members suffered a common injury, e.g., receipt of the letter. *See id.* at 593. The potential for various damage awards was no bar to class certification:

> The damages recoverable for the class members' injuries may differ-some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief-but the fact remains that their injuries are the same. The FDCPA does not require proof of

actual damages as a precursor to the recovery of statutory damages ... the [FDCPA] is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not ... [the named plaintiff,] notwithstanding her lack of a claim for actual damages, [ ] still has standing to represent [the class of those sent the letter].

*Id.* at 593–94. Because the only individual issue remaining for Talbott's proposed class is the precise identification of the VCM, common questions of law and fact predominate over an individual-specific issues.

■ GC Services says the one-year statute of limitations period for FDCPA violations renders Talbott unable to represent certain proposed class members. This argument is unpersuasive. Specifically, the letter Talbott received from GC Services is dated April 4, 1996, thus rendering April 4, 1997 as Talbott's statute of limitations deadline. Talbott timely filed his complaint on March 21, 1997. Talbott's proposed class consists of those sent the letter that was not returned undeliverable "during the one year period prior to the date of the filing of this action." GC Services argues that Talbott cannot represent those that received the letter before April 4, 1996. Because Talbott's claim was timely filed and asks for the full one-year period of those receiving the letter, I fail to see why Talbott cannot represent those claims.[6]

### iii. *Typicality*

■ The Fourth Circuit notes that "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *See Broussard v. Meineke Discount Muffler Shops,* 155 F.3d 331, 340 (4th Cir. 1998) (citing to *Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998)). Typicality is satisfied when the event arises from "the same event or practice or course of conduct" and "similarity of legal theory may control even in the face of differences of fact." *De LaFuente v. Stokely-Van Camp,*

*Inc.* 713 F.2d 225, 232 (7th Cir.1983). Typicality does not require that the claims be identical. *See Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177 (4th Cir.1993).

■ Talbott's claims are typical of the proposed class members' claims. Typicality is, by definition, inherent in Talbott's class, i.e., each class member was subjected to the same FDCPA violation as Talbott when they were sent the dunning letter. Much like the facts in *Gammon,* typicality is satisfied because the named plaintiff's "claim rests on the theory that GC Services' standard debt collection letter violates the FDCPA...." *Gammon,* 162 F.R.D. at n. 4.

The *Byes* decision, cited by GC Services, is not controlling. *See Byes v. Telecheck Recovery Services, Inc.,* 173 F.R.D. 421 (E.D.La.1997). The named plaintiff in Byers *received five* collection letters. Class certification was sought for those *sent* similar collection letters. *Byes,* 173 F.R.D. at 423. Proposed class members would have atypical claims to the named plaintiff, the court ruled, because (i) "[e]ach of the five letters ... are alleged to have violated the FDCPA in different ways," *Byes,* 173 F.R.D. at 424, (ii) "all class members did not receive all five letters," *id.,* 173 F.R.D. at 425, and (iii) the class included those that never received, but were sent, the letters. Talbott's proposed class, of course, involves just one letter violating the FDCPA in the same way for each plaintiff.

Similarly, the *Sandlin* opinion is distinguishable. *See Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662 (M.D.Fla.1996). *Sandlin* involves a FDCPA class certification motion regarding unauthorized payoff fees. The five proposed classes were not certified because there was no differentiation between those that actually paid the imposed payoff fees and those that did not. The named plaintiff's claims were atypical because the named plaintiff did not suffer or pay actual damages. *Sandlin,* 168

---

6. Perhaps a more interesting argument would suggest that Talbott is suited to represent those receiving the letter during the time Talbott for-

feits (e.g., from March 21 to April 4, 1997) by filing earlier than he is required.

F.R.D. at 667–68.[7] Because Talbott's proposed class does not seek actual damages any differences in actual damages suffered by any VCM is irrelevant.

### iv. *Adequacy of Representation*

■ Rule 23(a)(4) embodies the due process element of a class action. *See Broussard,* 155 F.3d at 338. Specifically, it works to protect the interest of class members by requiring that the named representative adequately represent the class. This means that the class representative has no conflicting claims with other class members and has a sufficient interest in the case's result. *See Barnett v. W.T. Grant Co.,* 518 F.2d 543, 546 (4th Cir.1975). Counsel for the named plaintiff, moreover, must be qualified to conduct the litigation vigorously. *See Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995); *Broussard,* 155 F.3d at 337. Talbott satisfies each requirement.

■ Talbott accepts and understands his responsibilities as class representative. *See* Talbott Decl., Pl. Memo. Supp. Class Certification, exh. B. There is no conflicting interest between Talbott's claim and those of the VCM.

Finally, Talbott's counsel is experienced in consumer class action litigation. *See* Bragg Decl.App. C (listing experience); *see e.g., Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D.Fla.1999) ("Defendant's concede that Plaintiff's counsel, *O. Randolph Bragg,* is qualified to conduct class action litigation.") (emphasis added); *Van Vels v. Premier Athletic Center of Plainfield, Inc.,* 182 F.R.D. 500, 511 (W.D.Mich.1998) ("counsel for Plaintiff (*Dale Pittman* ) has substantial experience and an impressive statewide reputation in" consumer protection law); *Woodard v. Online Information Serv.,* 191 F.R.D. 502 (N.D.N.C.2000).[8]

GC Services suggests that Talbott's counsel is inadequate because they do not provide a factual basis for the identity or number of VCM. This information was sought, of course, but is not readily obtained from GC Services. Because Talbott's counsel successfully advances a presumption of numerosity, *see supra,* it seems incongruous to simultaneously rule that counsel is an inadequate representative on the grounds for which they have succeeded.

### B. *Fed.R.Civ.P. 23(b) is Satisfied*

Because the requirements in Fed.R.Civ.P. 23(a) are satisfied the additional conditions set forth in Fed.R.Civ.P. 23(b) are examined. Only one of these conditions need be satisfied. *See Alston v. Virginia High School League, Inc.,* 184 F.R.D. 574, 577 (W.D.Va. 1999). The relevant portion reads

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \*
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Fed.R.Civ.P. 23(b).

### i. *The Class is maintainable under Rule 23(b)(3)*

■ Here, common questions predominate because of the standardized nature of GC Services' conduct; namely the dunning letter and its FDCPA violation. *See Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D.

---

7. The *Sandlin* court adds that the named plaintiff lacked standing because he did not suffer actual injury. *Sandlin,* 168 F.R.D. at 668.

8. I am not convinced that counsel is inadequate to represent the VCM because, as argued by GC Services, Talbott filed a motion one day late. No prejudice accrued to GC Services from this brief delay and, moreover, the Court dismissed this tardy motion without prejudice.

331 (N.D.Ill.1974) (Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices). This is true even though the nature and amount of damages may differ among class members. *See Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D.Ill.1989). "Predominance" does not require the common questions to be dispositive, *see Chisolm*, 184 F.R.D. at 566, and is satisfied here because

> it is the use of standardized debt collection letters that have given rise to the plaintiff's claim. The questions of law and fact involved ... relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues.

*D'Alauro*, 168 F.R.D. at 458.

It is true that Talbott's proposed VCM will need to show that the debt is consumer in nature. However, "determinations of whether each transaction involved a 'consumer debt' do not predominate over issues common to the class." *Ballard*, 186 F.R.D. at 598–99. Such issues of proof, should they arise, can be addressed "in a manner which will not require the testimony of each and every" recipient of the dunning letter. *Ballard*, 186 F.R.D. at n. 14. All that remains to be determined is the identity of those who received the GC Services' dunning letter.

■■■■ Talbott's proposed class action is the superior means of resolving the claims against GC Services. Efficiency is the primary focus to determine if a class action is the superior method to resolve a controversy, *see Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D.Ill.1972), and the court looks to judicial integrity, convenience, and economy. It is proper for the court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503

F.2d 1161 (7th Cir.1974); *see also In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D.Ill.1977) (efficiency is more apparent when the individual claim would be small) (citations omitted).

■■■ Several courts examining these factors say that class actions are the most efficient way to try the legality of a collection letter. *See D'Alauro*, 168 F.R.D. at 458, *Peters*, 179 F.R.D. at 568; *Chisolm*, 184 F.R.D. at 566. Class certification of Talbott's FDCPA action is, similarly, an efficient and appropriate manner to resolve the controversy. *See West v. Costen, supra. Ballard*, 186 F.R.D. 589.[9]

### ii. *Rule 23(b)(2) declaratory relief is not appropriate*

Talbott requests a declaratory judgment, on behalf of the VCM, that GC Services' practices violate the FDCPA.[10] Talbott argues that *Gammon*, 162 F.R.D. 313, approves declaratory relief when GC Services has acted on grounds uniform to the class. If declaratory judgment is rendered in favor of the class, Talbott continues, the remedy would be easily determined by the statutory damages calculation.

Rule 23(b)(2) generally does not require notice to class members or allow them to opt out of the class. Accordingly, it does not extend to cases where money damages is the predominate relief. *See Gammon*, 162 F.R.D. at 319; *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 500 (D.Md.1998) ("although the Court will certify the class as a whole to liability, the Court cannot use Rule 23(c)(4) to create a case which satisfies Rule 23(b)(2)'s prerequisites.") (citations omitted); *Ballard*, 186 F.R.D. at 596.

Talbott's predominate relief requested for the VCM is money damages. · This Court's earlier summary judgment ruling that the dunning letter in question violates the FDCPA, *see Talbott*, 53 F.Supp.2d 846, renders the need for further declaration moot. The earlier ruling settles "the issue of the legality of GC's behavior with respect to the

---

9. Rule 23(c)(2) provides opt out rights when a class is certified under Rule 23(b)(3).

10. Injunctive relief is not available to private litigants under the FDCPA. *See Gammon*, 162 F.R.D. at 319.

entire class" and therefore distinguishes this element from *Gammon*. *Gammon*, 162 F.R.D. at 320 (finding a declaration necessary to settle that issue of liability). Language in *Gammons*, paradoxically, notes how the earlier partial summary judgment in favor of Talbott collaterally estops GC Services from denying liability based on the dunning letter sent to any VCM. *See id.*, (the named plaintiff "could just as easily litigate his claim individually, and, should he prevail, GC Services would be collaterally estopped in subsequent cases from raising the claim that its conduct was not wrongful."). Talbott's class will not be certified pursuant to Fed. R. Civ. P. 23(b)(2).[11]

The plaintiff's motion is **GRANTED** in that a conditional class certification is ordered pursuant to Fed.R.Civ.P. 23(b)(3).

An appropriate order shall issue.

---

**11.** Talbott suggests that a *cy pres* remedy may be fitting for classes certified under Rule 23(b)(2). Because I do not certify the class under that section this argument need not be addressed.