**Joseph TALBOTT, on behalf of himself and all others similarly situated,**
**Plaintiff,**

v.

**GC SERVICES LIMITED PARTNERSHIP,**
**Defendant.**

**No. Civ.A. 97–CV–00010–D.**

United States District Court,
W.D. Virginia,
Danville Division.

May 26, 1999.

---

Dale Wood Pittman, Petersburg, VA, for Joseph Talbott, on behalf of himself and all others similarly situated, plaintiff.

James C. Skilling, Cherry, Seymour & Skilling, Richmond, VA, for GC Services Limited Partnership, defendant.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now are two motions for summary judgment by the defendant GC Services Limited Partnership ("GC Services"). The defendant seeks summary judgment on two of plaintiff's claims brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"): (1) that the collection letter sent by the defendant to plaintiff Talbott violated 15 U.S.C. § 1692g by containing language that contradicted and overshadowed the required validation notice; and (2) that the defendant unlawfully sought to collect an unauthorized fee of 35% of the plaintiff's underlying debt in violation of 15 U.S.C. §§ 1692e(2)(A) and f(1). Also before me is plaintiff's cross motion for summary judgment on the overshadowing issue.

Both parties have fully briefed the issues involved and have been heard at oral argument. The motions are therefore ripe for disposition. For the reasons set forth herein, the defendant's motion for summary judgment on the issue of the 35% fee is **GRANTED**; the defendant's motion for summary judgment on the overshadowing issue is **DENIED**; and the plaintiff's motion for summary judgment on the overshadowing issue is **GRANTED**.

### I. FACTUAL BACKGROUND

This case concerns an overdue debt incurred by plaintiff Joseph Talbott for long-distance telephone service provided by MCI and MCI's subsequent employment of an outside collection agency, GC Services, to collect that debt. Plaintiff claims that the collection charges MCI and its agents sought to recover, and the manner in which recovery was sought, were illegal under federal law.

The factual background in this case is fairly straight forward. On April 4, 1996, on the letterhead of GC Services, Mr. Talbott received a dunning letter in connection with his residual residential account with MCI. The letter sought to collect $125.49 on behalf of the long distance company. The letter stated, in part:

> IN AN EFFORT TO RESOLVE THIS ACCOUNT, MCI HAS AUTHORIZED U.S. TO WAIVE THE COLLECTION FEE OF $32.53 UPON RECEIPT OF YOUR PAYMENT OF $92.96 WITHIN TEN (10) DAYS.
>
> THIS WILL BE YOUR ONLY OPPORTUNITY TO AVOID COLLECTION CHARGES. YOUR PROMPT PAYMENT IS NECESSARY TO PREVENT ADDITIONAL COSTS. MAIL

YOUR CHECK OR MONEY ORDER FOR $92.96. IF PROMPT PAYMENT IS NOT RECEIVED WITHIN TEN (10) DAYS OF THE DATE OF THIS LETTER, THIS OFFER IS· RESCINDED.

The reverse side of the letter provided the 30–day validation notice required under 15 U.S.C. § 1692g informing the consumer of his right to dispute the debt, or any portion thereof, in writing, within thirty days after receipt of the initial collection communication.

## II. PROCEDURAL BACKGROUND

The procedural background of this action is somewhat complicated. The case is part of an on-going multi-district litigation ("MDL") proceeding. This MDL proceeding involved five cases. *Talbott v. Dunn & Bradstreet* (4:97CV0007), *Talbott v. GC Services Ltd.* (4:97CV0010), *Van Hattum v. Dunn & Bradstreet* (4:97CV0064), *Hahn v. MCI* (4:97CV0065), and *Cavaliere v. GC Services Ltd.* (4:98CV0052). Three of these cases were brought in other jurisdictions and transferred here pursuant to a December 17, 1997 transfer order from the Judicial Panel on Multidistrict Litigation, creating MDL 1198. The remaining two actions, brought by Mr. Talbott, were originally filed in this district. In addition to his individual claims, Mr. Talbott also sought Virginia class certification in both actions. The instant case was filed in this Court on March 21, 1997. It was not specifically addressed by the Judicial Panel. I later consolidated it with the transferred cases.

Before I joined this case in the MDL procedure in February of 1998, it had progressed steadily. The defendant had filed a motion to dismiss which was denied by this Court on November 28, 1997. The defendant then filed a motion for summary judgment on January 14, 1998. The motion was limited to two issues: (1) whether plaintiff timely filed a motion for class certification, and (2) whether plaintiff is an adequate class representative. On January 21, 1998, plaintiff filed its opposition to defendant's motion for summary judgment and also a cross-motion for partial summary judgement on the overshadowing issue. The defendant has responded. Defendant has also responded to the plaintiff's motion for class certification. Then on February 5, 1998, I continued proceedings in this individual case pending the outcome of an MDL pretrial conference. It was after this conference that I consolidated this case with the MDL. Following the transfer and consolidation of all five cases, I sought proposed pre-trial schedules and discovery plans from all plaintiffs and defendants. On March 27, 1998, I issued Pretrial Order No. 2 setting forth a discovery and briefing schedule. I decided, in the interest of judicial economy, to hear and decide the substantive issues of the case (the authorization of the 35% charge and the overshadowing issue) before the parties engage in further discovery or briefing regarding the class certification.

This course of action obviously altered the progression of Mr. Talbott's case against GC Services, putting on the backburner several motions that had been previously filed. Since I set forth this litigation schedule, the other cases in the MDL have been resolved and are no longer before me. The parties in this case, however, have continued, correctly, to adhere to the MDL schedule. These cross-motions for summary judgment present only the two substantive issues and this opinion will address only those issues, reserving judgment on any remaining issues, specifically regarding class certification.

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, the court is required to view the evidence in a light most favorable to the nonmoving party and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). Once the movant has met its burden, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial" in order to defeat the summary judgment motion. *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. 1348.

## IV. FDCPA AND THE LEAST SOPHISTICATED CONSUMER STANDARD

 The FDCPA protects consumers from abusive debt collection practices by prohibiting the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To show a violation of the FDCPA, the plaintiff must show (1) that the plaintiff is a "consumer" within the meaning of the statute; (2) that the defendant collecting the debt is a "debt collector" within the meaning of the statute; and (3) that the defendant has violated the FDCPA by act or omission.

 The defendant does not contest that the first two elements are met in this case. Only the twin issues of violation under § 1692e (the 35% collection fee) and § 1692g (overshadowing) are in dispute. To analyze the existence of a FDCPA violation, the Fourth Circuit has adopted a "least sophisticated consumer" standard. *U.S. v. National Finan. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir.1996). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* at 136 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993)).

I now address each of the alleged violations in turn.

## A. The 35% Collection Fee Charge

MCI provides its long-distance telephone services pursuant to a federally filed tariff known as "MCI Telecommunications Corporation" Tariff FCC No. 1 (the "tariff"). The plaintiff challenges the addition of a collection fee of 35% of the debts owed MCI on accounts requiring referral to an outside agency for collection on the grounds that such a fee is not authorized by MCI's tariff, and therefore a demand for such a fee is a false or deceptive statement in violation of sections 1692e(2)(B), 1692e(10), and 1692f(1).[1] I disagree.

The tariff specifically provides that

In the event the Company incurs fees or expenses, including attorney's fees, in collecting, or attempting to collect, any charges owed the Company, the custom-

1. The plaintiff also makes the argument that MCI's F.C.C. tariff provisions do not apply to residential long distance service, and therefore there is no authorization for any recoupment of expenses expended in collection permitted under the tariff. In support of this argument, plaintiff relies principally upon the fact that the tariff is ostensibly labeled (at the top of each page) "Customized Business Communications Service." I find this argument thoroughly unpersuasive. First, it would be nonsensical if MCI's controlling tariff failed to cover its residential long distance services. In addition, the defendant has submitted the undisputed affidavit of Kenneth A. Fox, a former FCC Commissioner and MCI's Vice–President for Regulatory Affairs at the time MCI filed the tariff to refute the plaintiff's interpretation of the tariff's application to residential accounts. Mr. Fox testifies that when MCI originally filed the tariff, the heading read "Customized Business Communication" because at that time MCI did not provide residential long-distance. When MCI later began to provide residential service, it simply revised the original tariff, thus the heading remains on the pages of the tariff but carries no legal significance.

er will be liable to the Company for the payment of all such fees and expenses reasonably incurred.

Therefore, if MCI actually incurs these expenses in the collection of a debt, and if they are "reasonable," then MCI is specifically authorized by the tariff to collect them from the debtor.

As described by the affidavit of Kathleen M. Rivet, director of Receivables Management for MCI, MCI's fees and expenses are primarily made up of 1) the overhead MCI incurs in its efforts to collect a past-due account up to the time it is written off, and 2) the cost of primary outside debt collectors. The plaintiff here contends that the tariff does not allow the defendant to recoup its own internal collection expenses. This position is defeated by the language of the tariff. The tariff provides recovery for "all such fees" related to collection, merely citing attorney's fees as one type of fee that is included in the permitted fee calculation.

MCI has presented detailed testimony about the origination and calculation of its internal costs. For each overdue account, MCI makes two and a quarter telephone calls per month, and sends out different MCI dunning letters at the various stages of delinquency culminating with a cancellation notice. The expenses incurred for these operations consist of the telephone charges for both outbound and inbound calls, the cost of personnel to place and receive calls, and the cost of the letters. Expenses also include general overhead. The costs are broken down for each month in the three-year period at issue in this action in the affidavit of Ms. Rivet. The defendant calculates that the average internal cost to MCI per workable account (accounts with balances of more than $20) is $27.07.

The second principle cost to MCI is the cost of the primary outside debt collector. If MCI is unable to collect the consumer debt after trying for about four months, MCI forwards it to one of a handful of primary outside debt collectors. It is at this point that MCI adds the 35% charge to the amount due from the consumer. Furthermore, even if the debt collector is successful in getting the debtor to pay off all of the charges due for the telephone service as well as 35% collection charge, MCI generally pays the debt collector a dollar amount that by itself is greater than the dollar amount of the 35% charge. (Rivet Aff. ¶¶ 10–16).

After considering MCI's internal costs and the costs of a primary outside debt collector, it is plain that MCI necessarily incurs fees and expenses in excess of 35% of the underlying debt when other accounts like plaintiffs are written off and forwarded to an outside agency for collection. First, the $27 in MCI's internal collection costs is by itself greater than the 35% charge for all accounts of $75 or less. Second, the cost of the outside debt collector is by itself greater than the 35% charge whenever the cost of the agency is 26% or more of the collected amount (assuming recovery of all of the original amount and all of the 35% charge). This is because, when one adds the original balance and the 35% charge together, the 35% charge represents 26% of that new balance. Therefore, whenever MCI pays a primary agency 26% or more of what is collected, MCI does not net 100% of the underlying debt, even if the agency collects 100% of the original balance and 100% of the 35% charge. Further, when MCI pays an agency 25% of what is collected, there is only 1% of the collected amount not accounted for by the agency's fee alone, which is more than offset by the $27.07 associated with internal collection costs.

■ More compelling however, than this general analysis of the actual occurrence of these fees, is the fact that there is no doubt that MCI actually incurred fees in excess of 35% of the underlying debt owed by Mr. Talbott. Mr. Talbott owed MCI $92.96 and MCI wrote off this debt and referred it to the defendant GC Services, adding the 35% collection charge of $32.54

for a total of $125.50. If Talbott had paid GC Services the entire $125.50 (he actually paid nothing), MCI would have been contractually obligated under its agreement with GC Services to pay 35% of the *collected amount*, or $43.93, an amount $11.39 more than the 35% collection charge imposed on Mr. Talbott. When added to the cost of MCI's internal collection efforts ($27.07), the total fees and expenses of collecting Talbott's debt would be $70.39. This amount is almost twice the 35% collection charge.

The plaintiff also makes an argument that even if the collection fee imposed represents actual costs incurred, they are unreasonable. I disagree. The 35% charge is reasonable within the meaning of the Collection Charge Provision of MCI's tariff. MCI negotiated its contract with an outside vendor providing support for MCI's internal collection activities. MCI had every economic incentive to obtain the lowest rate possible. It is not conceivable that MCI would want to expend any more than necessary in its collection attempts, or the amount paid to outside agencies in their collection attempts, especially given the frequency with which many accounts are never collected at all.

I find the imposition of a 35% collection fee reasonable, thereby authorized by the tariff and not in violation of the FDCPA.

**B. Overshadowing Issue**

■■■■ Plaintiff Talbott alleges that the April 4, 1996 correspondence sent by GC Services contained language which contradicted or overshadowed the validation notice in violation of 15 U.S.C. § 1692g.[2] Section 1692g of the FDCPA provides that debt collectors must inform consumers of their rights in connection with the collec-

tion of a debt. Within five days of the initial communication from the party collecting the debt, the collector must send a written notice to the debtor informing him of the amount and nature of the debt, and of his right to dispute the validity of the debt or any portion thereof within 30 days after receipt of the notice. To meet the requirements of § 1692g, the validation notice must be effectively conveyed to the consumer:

> To be adequate, the "validation notice" must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer. The notice also must not be overshadowed or contradicted by other messages.

*United States v. National Finan. Servs.*, 98 F.3d 131, 139 (4th Cir.1996); *See also Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991). This standard is a stringent one. The analysis is not an objective inquiry into whether the language of the demand letter does overshadow and contradict the validation notice. I must instead decide whether the least sophisticated consumer would find the language contradictory or inconsistent so as to leave him confused about his right to dispute the debt.

A survey of the law in this jurisdiction reveals that courts have been quick to find overshadowing in violation of § 1692g where a demand letter requested "immediate payment" or payment by any deadline falling before the expiration of the thirty days allowed by the validation notice for disputing the debt. In *National Financial Services*, a district court held that the collecting agency's notices demanding immediate payment or payment within ten days from the date of the notice overshad-

---

**2.** The plaintiff also briefly makes the argument that a violation under § 1692g is also *per se* a violation under § 1692e(10) which prohibits the use of false or misleading representation in the collection of a debt. I don't think this is an accurate statement of the law. Cases where the courts have found § 1692e(10) in addition to § 1692g violations

have generally been where the letter issued falsely threatened legal action or threatened to make immediate credit reports where none was to be made for at least 60 days. *National Financial*, 98 F.3d at 135; *Creighton*, 981 F.Supp. at 415. In this case, where there is no substantively false information, there is no concomitant § 1692e(10) violation.

owed the thirty days allowed by the validation notice itself. 98 F.3d at 138. The Court of Appeals upheld the lower court's decision, stating that such a decision "was compelled" by *Miller v. Payco–General. Id.* In *Miller,* the court held that a form letter demanding "immediate full payment" and commanding the consumer to "phone us now" overshadowed the validation notice on the back of the letter. The court stated:

> The emphasis on immediate action also stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request validation. A consumer who received Payco's form could easily be confused between the commands to respond "immediately," "now," and "today," and the thirty day response time contemplated by the statute ... Payco need not cease its collection efforts in order to abide by the statute, it simply needs to convey effectively the validation notice without contradicting it.

*Miller,* 943 F.2d at 484.

Guided by *Miller* and *National Financial,* district courts have held similar language in demand letters contradictory in violation of § 1692g. In *Morgan v. Credit Adjustment Board,* 999 F.Supp. 803 (E.D.Va.1998), that court held that language demanding "immediate attention" and directing the consumer to contact the office within seven days could confuse the least sophisticated consumer. *Id.* at 807. In *Withers v. H.R. Eveland,* 988 F.Supp. 942, 946 (E.D.Va.1997), a demand that the consumer telephone or pay in full within five days was found to be overshadowing even where the validation provision was contained in the body of the letter immediately following the initial demand.

■ Generally, a notice is "overshadowing and contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Creighton v. Emporia Credit Service, Inc.,* 981 F.Supp. 411, 416 (E.D.Va.1997). This principle has consistently been applied in most other jurisdic-

tions that have examined the issue as well. Where a demand letter asks for immediate payment or payment within thirty days, courts have overwhelmingly found that language overshadowing. *See, Savino v. Computer Credit,* 164 F.3d 81, 1998 WL 887049 (2nd Cir.1998) (a demand for immediate payment was a violation where the letter did not explain that the demand did not override the consumer's right to dispute the debt); *Russell v. Equifax,* 74 F.3d 30 (2nd Cir.1996) (the contradictory language need not be threatening, just inconsistent, to be overshadowing); *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir. 1991) (a demand coupled with the threat of legal action could induce an unsophisticated debtor into overlooking their right to dispute the debt); *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997) (even if the demand language is not in direct contradiction to the validation notice, it would easily be confusing to the debtor, "turning the required disclosure into legal gibberish"); *Swanson v. Southern Oregon Credit Service,* 869 F.2d 1222 (9th Cir.1988) (invoking a shorter response time for collection than thirty days was an attempt on the part of the collection agent to evade the spirit of the FDCPA).

■ In the case before me, Talbott concedes that the proper validation language required by the FDCPA was provided by GC Services on the back page of the correspondence. Nevertheless, Talbott contends that the 30 day validation notice was overshadowed by paragraphs 2 & 3 on the front page which inform Talbott that unless he pays within ten days, he will be assessed a collection fee of $32.53. The letter states that payment within ten days "will be your only opportunity to avoid collection charges. If payment is not received within ten days of the date of this letter, this offer is rescinded." I think this is exactly the kind of language that, while not directly contradictory to or irreconcilable with the validation notice, could easily confuse the least sophisticated consumer and leave him unsure about his right to

dispute the debt. The defendant argues that the letter at issue here is distinguishable from others in which courts have found overshadowing because this letter does not "demand" payment. The defendant contends that the language merely conveys an offer of settlement and specifically states that if payment was not received within ten days, the offer would be rescinded. The defendant maintains that reasonable construction of this language is that there is no demand for immediate payment, no threat of legal action, and no threat of credit reporting. I think the defendant is arguing semantics here. While I agree that an average consumer might not find the letter a demand for immediate payment, there is little doubt that the *least* sophisticated consumer could easily believe that he had to choose between exercising his right to contest the debt and paying within ten days or he could face adverse action in the form of additional charges. The least sophisticated consumer might be induced to forgo his rights under the validation provision in order to foreclose the possibility of eventually being held responsible for both the underlying debt and the 35% collection fee. I find that the defendant has failed to raise a genuine issue of material fact on the issue of overshadowing and the plaintiff is therefore entitled to summary judgment.

## V. CONCLUSION

In accordance with this memorandum opinion, I find that the 35% collection fee imposed by MCI was reasonable and not a violation of the FDCPA. I further find, however, that the collection letter issued by GC Services contained language that could mislead or confuse the least sophisticated debtor as to his right to contest the debt. Therefore, the defendant's motion for summary judgment on the issue of the 35% fee is **GRANTED;** the defendant's motion for summary judgment on the overshadowing issue is **DENIED;** and the plaintiff's motion for summary judgment on the overshadowing issue is **GRANTED.**